## No. 11,383.

### VER STRATEN *v.* WORTH, ET AL.

Decided January 25, 1926.    Rehearing denied March 1, 1926.

Action to have a quitclaim deed, absolute on its face, declared a mortgage. Judgment for plaintiff.

### *Affirmed.*

1. PLEADING—*Complaint—Amendment.* In an action to have a quit-claim deed declared a mortgage, it was not error to permit a second amendment to the complaint to be filed although it added nothing to the efficiency of the original complaint as a basis for the relief asked.

2. MORTGAGE—*Deed—Proof.* In Colorado, oral evidence is admissible to show a deed is a mortgage, even though fraud or mistake is not alleged specifically.

3. *Deed—Evidence.* In an action to have a deed declared a mort-gage, the cause of action must be established by clear, satisfactory, unequivocal and convincing evidence.

4. APPEAL AND ERROR—*Findings.* Findings of the trial court supported by legal competent evidence, will not be disturbed on review.

5. *Sufficiency of Evidence.* In an action to have a deed declared a mortgage, evidence reviewed and the contention of defendant that the evidence was insufficient to sustain a judgment against him, overruled.

6. ESTOPPEL—*Mortgage Indebtedness.* Where a mortgagee represented to the land owner that if he would give him a quitclaim deed to the premises, the notes representing the original indebtedness would be thereby cancelled and the maker released, he is estopped to there-after assert that the quitclaim deed did not so operate.

7. CONTRACT—*Deed as Mortgage—Extension of Time of Payment—Con-sideration.* An agreement to pay an increased rate of interest is a sufficient legal consideration for extending time of payment of a mortgage indebtedness and for an oral agreement that a quitclaim deed should constitute a mortgage.

8. LACHES—*Deed a Mortgage—Action.* Where an action to have a deed declared a mortgage is brought within two months after the cred-

itor repudiates his agreement to allow redemption, the contention that plaintiff was guilty of laches in not sooner instituting the action, is, under the facts disclosed, held untenable.

*Error to the District Court of Larimer County, Hon. Claude C. Coffin, Judge.*

Mr. THOMAS H. GIBSON, for plaintiff in error.

Mr. FANCHER SARCHET, Mr. PAUL W. LEE, Mr. GEORGE H. SHAW, for defendants in error.

*En banc.*

MR. JUSTICE CAMPBELL delivered the opinion of the court.

THE object of the action is to have a quitclaim deed of land, absolute on its face, declared to be a mortgage. The trial court, without aid of a jury, found all the issues of fact for the plaintiff Worth and rendered the appropriate decree to restore to him his rights in the land and, as a part of and incidental to the principal relief as between the parties to the deed, required the defendant producing company, which had been and still was and is in possession of the land as a lessee from both grantor and grantee and operating the same for oil and gas, to acknowledge Worth as the owner and lessor and to account to him for royalties. Defendant Ver Straten is here with his writ to review the decree, joining as defendants in error the plaintiff Worth and the defendant producing company. Of the numerous assignments of error only those are worthy of consideration which go to the insufficiency of the original complaint and that pleading as amended, the alleged insufficiency of the evidence to support the decree, and that the decree itself is contrary to the law and the evidence and the findings of fact based thereon. Probably a more accurate state-

ment is that if these assignments should be resolved against defendant Ver Straten, as they are to be, all other questions urged are mere abstract propositions, regardless of their merits under a different state of facts, and would not justify a reversal.

1. The complaint as filed contains the usual allegations of a bill in equity where the relief asked is a decree declaring a deed, absolute on its face, to be in fact a mortgage; and where the parties themselves at the time by oral agreement intended the deed to be not a conveyance of title but a security, or a change in the form of a security, of a previously existing and continuing debt which the grantor owed to the grantee. An amendment set forth possibly more clearly that when the deed was made it was intended and agreed between the parties thereto that it was to operate solely as a mortgage and not as an absolute conveyance, and was to represent a continuance of the relationship of debtor and creditor, mortgagor and mortgagee, then and theretofore existing between the parties, and was not intended to be taken or understood as an extinguishment of plaintiff's equity of redemption. The purpose, however, of the plaintiff seems also to have been to make the complaint partake of the nature of a bill with a double aspect. And to bring the case in line with decisions of other states (though not considered necessary under our own), which enforce the so-called restricted doctrine that relief is granted in such cases only upon the equitable ground of fraud or mistake. Therefore, in this second amendment the plaintiff further in effect says that it would be a constructive fraud upon him if the defendant was now permitted to treat this deed as absolute since the plaintiff wholly relied upon the defendant's representations and oral agreement that the mortgage was to be continued, notwithstanding the change in form, and that plaintiff would be permitted to redeem, and since the plaintiff would not have executed the instrument save for the oral agree-

ment set forth, and that in a court of equity the defendant should be and is estopped now to say that the quitclaim deed was an absolute conveyance and plaintiff's equity of redemption was lost.

In view of the decision of this court in *Gibbons v. Joseph Gibbons Consolidated M. & M. Co.*, 37 Colo. 96, 86 Pac. 94, 11 Ann. Cas. 323, and other cases, we think it was not error on the part of the court to permit the second amendment to the complaint to be filed, though it added nothing to the efficacy of the original complaint as a basis for the relief asked. At page 105 of the Gibbons opinion it is said that although in some of the earlier cases oral evidence was permitted only on the ground of fraud or mistake, yet in later cases it was deemed sufficient evidence of fraud for the grantee to treat the conveyance as absolute when in fact it was merely intended as a security for an existing debt. Indeed, section 280 of our Code of Civil Procedure provides that a mortgage of real property shall not be deemed a conveyance whatever its terms, so as to enable the owner of the mortgage to recover possession without foreclosure and sale, and the fact of a deed being a mortgage in effect may be proved by oral testimony. Such being the doctrine in this state, we repeat, that while this second amendment was not necessary, the order of the court permitting it to be made was not prejudicial error of which the defendant may complain. In L. R. A. 1916B, pp. 18, 81, there is a thorough discussion of the doctrine and a number of cases from Colorado are cited in which our code provision is referred to and this state is classed as one of that large majority in this country which enforces the unrestricted doctrine that parol evidence is admissible to show a deed to be a mortgage even though fraud or mistake is not alleged.

2. The trial court on conflicting evidence found the issues of fact for plaintiff. We have held in other cases that the evidence in support of a cause of action such as

this complaint contains, must be established by clear, satisfactory, unequivocal and convincing evidence. This rule, however, does not contemplate that a reviewing court may disregard the findings of the trial court whose presiding judge saw and heard the witnesses as they testified, and substitute therefor its own findings, unless it is altogether clear that the trial court reached its conclusion through a misconception of the weight or sufficiency of the evidence, or that some salutary rule of law or practice was ignored. In a recent case in this court, *Peppers v. Heiserman,* 74 Colo. 139, 219 Pac. 781, the defendant alleged that the deed there in controversy was made in satisfaction of promissory notes which it secured. The defendant in his answer denied what the complaint alleged, that the deed was so made, and alleged that it was given as security for the payment of the notes and prayed a foreclosure of the deed. The trial court found generally for the defendant and dismissed the complaint and, after entering judgment on the notes, decreed a foreclosure. We sustained the judgment. Upon a petition for rehearing, which the plaintiff strongly urged, the contention was that the case was not established by that certainty which is necessary. The petition for rehearing was denied and we said the weight of the evidence was for the consideration of the court below.

Plaintiff in error relies for reversal most strongly upon the decision of this court in *Nelson v. Lunt,* 74 Colo. 265, 220 Pac. 1006. That decision is not in his favor and the facts of the two cases are radically and essentially different. The plaintiff in the Nelson case was not attempting to establish the fact that a deed was a mortgage, because there was no debt to be secured; and there was no contention that there was any debt in the case. Yet plaintiff in error seems to think the Nelson case is identical with his case. There the property was conveyed to the defendant in trust which the defendant repudiated. But

the real reason why the Nelson case is not in point is that
there, merely upon conflicting evidence, the court affirmed
the judgment of the court below which held that plaintiff
did not sustain the burden imposed upon him in such
cases by clear, convincing and unequivocal evidence. In
this case we are affirming the judgment of the trial court
because the evidence, as found by it, convinced the pre-
siding judge beyond a reasonable doubt that the deed in
question here was a mortgage, and nothing appears in
this record that authorizes us to set aside the findings.

One fundamental error in plaintiff in error's argument
consists in the fact that he insists, without any evidence
to support his contention, that the transaction and agree-
ment between the parties at the time this quitclaim deed
was signed, was that Worth, the grantor, might have a
reasonable time within which to buy the property back
upon terms satisfactory to the grantee Ver Straten. The
court found against this contention and we are con-
strained to say that it could not well have done other-
wise. It would serve no useful purpose to comment at
length upon the evidence. It will sufficiently disclose the
nature of the case to say the evidence tends to show, and
the court so found, that the land in question was once
owned by Ver Straten and another person who conveyed
it to one McBride who gave a trust deed upon the land
to secure promissory notes representing the purchase
price. McBride afterwards sold the land to the plain-
tiff Worth who assumed payment of the mortgage notes
which afterwards were acquired by defendant Ver
Straten. Neither McBride nor Worth kept up the in-
terest on the notes or paid the same when they became
due. Ver Straten was pressing for payment and tried
by himself, and through others at his solicitation, to
induce Worth to convey the land to him in payment of the
mortgage debt which Worth repeatedly refused to do
because he believed that oil underlay the lands in that
region, and that the probable or potential value of the

property exceeded the mortgage debt. There was a second mortgage upon this land to a subsidiary company of the First National Bank of Fort Collins, in Larimer county, where the land in question was situate. Worth had been advised to hold this land because of its potential value and he had given an oil and gas lease on the same. After a number of interviews between them Ver Straten finally made a proposal to Worth that if he, Worth, would give him a quitclaim deed to the land and secure a release of the second mortgage he would cause the first mortgage or trust deed given by McBride to be released and have the mortgage notes cancelled and allow Worth to take his own time to effect a redemption by paying their amount. After Worth, in the presence of Ver Straten, stated to his adult son the offer of Ver Straten, the latter assenting thereto, and upon the advice of his son and in accordance with his own judgment, Worth accepted the proposition and thereafter Worth and Ver Straten went to the office of Judge Stover, Ver Straten's attorney, there to sign a quitclaim deed prepared by the attorney at Ver Straten's request, which Worth executed and acknowledged. At the same time or shortly thereafter, accompanied by Worth, Judge Stover went to the bank where the McBride notes were kept and cancelled them and afterwards caused the public trustee to release the trust deed securing the same. In order to get a release of the second mortgage Worth and Ver Straten afterwards went to the First National Bank and interviewed Mr. Moore, president of the bank and of the trust or investment company which held the second mortgage. Moore testified that Worth and Ver Straten came to his desk in the bank and had a conversation with him respecting this piece of land and deed of trust held by his company. He says, in substance, that Ver Straten and Worth came in together and Worth explained what they came in for and that he was to get us to release our second mortgage. He stated that he and Ver Straten had been

discussing the matter and Ver Straten was threatening to foreclose the first mortgage and that they wanted to save expense of litigation and if we would release our junior blanket mortgage they had an agreement whereby he could redeem from Ver Straten when he paid what he owed him. Worth was to deed the land to Ver Straten, I don't know whether he said quitclaim or not. Ver Straten stated that all he wanted was his money, he didn't want the land, and when Worth paid what he owed him he could have the land. Moore further testifies that, relying upon this statement of Ver Straten as to the agreement between him and Worth, he caused the second mortgage to be released. This left the unincumbered legal title, as far as the records show, in Ver Straten.

Other witnesses testified in support of Worth, corroborating in all substantial respects his version of the transaction. Plaintiff's evidence tended to show that Ver Straten's purpose, as stated by him, was to get the title in his own name as he was more familiar with business transactions than Worth and was in position to get inside information as to the oil situation and that if he got legal title he would be better able to make a deal with some one who wished to lease the land, and obtain as a bonus a sufficient amount of money to pay off the mortgage indebtedness to him and leave a substantial sum for Worth, who would also have the land free from incumbrance.

The court specifically found the facts to be as Worth testified to; that at the time the quitclaim deed was signed it was the intention and understanding and the agreement of both parties that the quitclaim deed was to be taken in lieu of and in substitution for the trust deed theretofore existing and as a new form of security for the amount of the notes which Worth had assumed to pay when he bought the land, and that the deed was not given in satisfaction or as an extinguishment of Worth's indebtedness to Ver Straten or as a bar of

Worth's equity of redemption. The court incorporated in the decree its findings and stated that it was convinced beyond a reasonable doubt of the truth of plaintiff's case. Ver Straten denied in its entirety the testimony produced by the plaintiff and there was some testimony, though not of a strong or convincing nature, to support some of his contentions. However that may be, the trial court passed upon the credibility of the witnesses and the sufficiency of the evidence and as there is legal and competent evidence to support the court's finding, we cannot disturb it.

Because of the insistence of defendant's counsel that the testimony of defendant's witness Judge Stover shows that an absolute conveyance was intended, we advert to the record on that point, which is far from sustaining the contention. Judge Stover is an honorable and reputable member of the legal profession. The plaintiff Worth in his testimony unreservedly conceded his high character. There is no question, as the trial court itself found, that at the time Judge Stover drew the quitclaim deed and when Worth signed it he believed that it was given in satisfaction of the mortgage debt; and acting upon that understanding caused the mortgage notes to be cancelled and the trust deed securing the same to be released. Judge Stover's testimony discloses that this impression or understanding was not derived from anything said or done by Worth at the time the deed was given or at any other time, though his distinct impression is that the deed was given as a cancellation of the debt. Neither Ver Straten nor Judge Stover claimed that Worth said anything at this interview to indicate the nature of the previous transaction or oral agreement between him and Ver. Straten. Worth testifies positively that the only thing that he wished to know of Judge Stover after the oral agreement was made was whether the deed in question was a quitclaim deed, and being assured of that he signed it and consented to the

cancellation of the notes which were signed by McBride and which he had assumed to pay because he intended and desired to pay Ver Straten's mortgage debt and thus keep his promise.

The testimony is amply sufficient to justify the evident conclusion of the trial court that Ver Straten's purpose in getting the quitclaim deed was that, if the tests that were being made on land in the vicinity showed that it was oil and gas producing, to treat the deed as absolute, and, if the tests were unfavorable, to treat it as a mortgage. He himself testifies that at any time before the producing well disclosed oil in commercial quantities he would have conveyed the land to Worth upon payment of the mortgage debt. We cannot set aside the judgment on the ground of insufficiency of evidence to sustain it.

3. The defendant insists that the transaction as declared by Worth could not have been a mortgage; that the alleged agreement between Ver Straten and Worth did not operate to release McBride from the mortgage debt; that there was no novation or substitution of one debt for another and, therefore, the agreement which Worth alleges was void as without consideration. We are unable to see what bearing the question of novation has in this case. If, as the evidence tended to show and the court found, Ver Straten intended to release McBride and forego satisfaction out of him and to rely exclusively upon Worth, he had the right to do so. And if, in order to secure an unincumbered legal title to this property, so that he might deal with some applicant for an oil lease on the land with a view to obtaining a bonus sufficient to pay the mortgage debt, and told Worth that if he would give the quitclaim deed he would permit him to redeem therefrom within any reasonable time thereafter, we are at a loss to conceive why such an agreement, if Worth concurred, was not valid and why it could not be established by oral evidence. But if it

be assumed that proof of novation of the original mortgage debt must be established, the record shows that Ver Straten is in equity estopped to assert that McBride was not released, because he falsely represented to Worth that that would result if Worth gave him a quitclaim deed to the premises and the McBride notes were cancelled. But if Worth, in such circumstances, was willing to agree to treat the deed as a mortgage, thereby promising to pay the same and Ver Straten acquiesced in it, we do not appreciate the argument of counsel that the alleged absence of novation rendered the alleged oral agreement invalid. Moreover, there is testimony that, as one consideration for the oral agreement and the extension of time of payment, Worth was to pay as interest on the debt interest at the rate of 7 per cent per annum instead of a lower interest rate provided in the McBride notes. This of itself is a sufficient legal consideration for the oral contract.

4. It is asserted by defendant that the plaintiff was guilty of laches in not sooner instituting the action. If that issue is in the case there is no evidence to sustain it. The action was brought within a very short time, about two months, after Ver Straten repudiated his agreement to allow a redemption. After the quitclaim deed was made and before oil was discovered, Worth had made arrangements to obtain of the First National Bank of Fort Collins a sufficient amount of money to pay this debt and repeatedly asked Ver Straten to convey the property to him on receipt of payment. Upon one pretext or another, according to the testimony of Worth, Ver Straten induced him not to borrow the money or insist upon payment, assuring Worth that he was perfectly safe under his arrangement and that when the proper time came he, Ver Straten, would carry out his agreement, and told Worth that if the title was conveyed back to him as requested, he, Worth, would give a mortgage or trust deed to the bank and the

bank would foreclose it, while he, Ver Straten, would protect Worth's interests in accordance with the agreement. As a further inducement to Worth not to borrow money from the bank with which to pay him, Ver Straten said, as seems to be true, that the bank would charge interest at the rate of 8 per cent per annum, while under the oral agreement the debt was to draw only 7 per cent interest. To the contention that it was improbable that Ver Straten would extend the time of payment indefinitely, a sufficient answer is that if Worth's statement is true, the relation of mortgagor and mortgagee continued and the extension would be for a reasonable time. And if, as Worth testifies, the oral agreement was made, the relation of mortgagor and mortgagee continued. This relation being reciprocal, the debtor would be obliged to pay within such reasonable time, and, if he did not do so, the right of Ver Straten to foreclose could be exercised, but he chose not to do so; hence, in such circumstances, the delay of Worth to pay the debt did not operate to extinguish the right or equity to compel performance when Ver Straten repudiated his contract. Worth relied upon these assurances, having confidence in Ver Straten at such times. The plaintiff was not guilty of laches. The following, among other, cases are authority for our conclusion: *Mitchell v. Toole,* (C. C. A.), 287 Fed. 25; *Blackstock v. Robertson,* 42 Colo. 472, 94 Pac. 336; *Hawkins v. Elston,* 58 Colo. 400, 146 Pac. 254; *Neikirk v. Boulder Natl. Bank,* 53 Colo. 350, 127 Pac. 137; *Heron v. Weston,* 44 Colo. 379, 100 Pac. 1130.

The complaint states a cause of action, the evidence in behalf of the plaintiff, if it was believed by the trial court, as it was, is sufficient to sustain the findings of fact, and the decree entered thereon. The decree is, therefore, in its entirety, affirmed.