**In re Theodore J. LOPEZ and Rebecca T. Lopez, Debtors.**

**Bankruptcy No. 93–14170 RJB.**

United States Bankruptcy Court, D. Colorado.

Jan. 26, 1994.

Lionel M. Menin, Denver, CO, for debtors.

James A. Kaplan, Machol, Johannes & Michael, P.C., Denver, CO, for objector Len Larson.

## MEMORANDUM OPINION AND ORDER

ROLAND J. BRUMBAUGH, Bankruptcy Judge.

THIS MATTER came before the Court upon the Debtors' Motion to Confirm Amended Chapter 13 Plan filed November 23, 1993, and the Objection thereto filed by Len Larson on December 10, 1993.

On February 12, 1993, the Debtor, Rebecca Lopez, pawned certain jewelry with Len Larson and received the sum of $1,525.00. The pawn ticket, or receipt, after the name, address, telephone number and pawn ticket number reads as follows:

Denver, CO 80202      2–12–93

Amount Paid One Thousand Five Hundred Twenty-five Dollars

Property Pledged jewelry

It is expressly made a part of and condition of this pledge that the property pledged may be redeemed by and delivered to contract seller or holder of this receipt without any liability on part of contract buyer.

**This ticket bears charges from the date issued.**

The "Contract For Purchase" (Debtors' Exhibit A) contains the following language:

CONTRACT FOR PURCHASE: For the consideration of the amount indicated, hand paid [sic], I assign all my rights and interests to the item(s) listed on the attached receipt to LEN LARSON, GEMOLOGIST. I guarantee that [sic] the item(s) to be free and clear and that LEN LARSON, GEMOLOGIST grants me the option to cancel this contract for the [sic] purchase and to receive my property by paying the charges set forth, in cash, on or before the date indicated on this contract
. . .

The contract provided that the Debtor could redeem her property by paying the "Option Charge" of $457.50, plus the original amount of $1,525.00, for a total of $1,982.50, in 90 days.

Prior to the expiration of the 90 days, the Debtors filed their Chapter 13 bankruptcy petition on April 19, 1993. In their Amended Chapter 13 Plan the Debtors have treated their relationship with Len Larson as a secured transaction and propose to pay him the value of the collateral, $1,982.00 [1] plus interest at the rate of 10%, for a total of $2,173.86 over the life of the Amended Plan [2] all under 11 U.S.C. § 1322(b)(2).

Larson objects to this treatment. He asserts, in effect, that he is not a secured creditor. Rather, he claims that the "Contract For Purchase" is not a secured transaction. Under the "Contract For Purchase," he argues, he is the conditional purchaser of the property pawned and that, in effect, it is merely an "executory contract" which has not been rejected or assumed by the Debtors. At the time of filing, he argues, the only right the Debtor had was to "cancel" the contract by paying the amount advanced plus the Option Charge with the corresponding obligation on his part to return the property. Larson argues that because this is an "executory contract" the Debtors' only option is to assume or reject the contract in accordance with 11 U.S.C. §§ 1322(b)(7) and 365 which, since the time under the contract has expired, means that if the Debtors assume the contract they must pay the full amount immediately or provide adequate assurance that they will promptly pay that amount under § 365(b)(1)(A).

Larson points to the Colorado statute concerning pawnbrokers, C.R.S. § 12–56–101 *et seq.*, to support his argument. Section 12–56–101(1), a definitions section, specifies that:

(1) "Contract for purchase" means a contract entered into between a pawnbroker and a customer pursuant to which money is advanced to the customer by the pawnbroker on the delivery of tangible personal

---

1. The Debtors, as part of their Motion, request that the Court determine the value of the jewelry to be $1,982.00 under 11 U.S.C. § 506(a). Larson does not dispute this valuation.

2. Larson does not object to the interest rate or the length of the Amended Plan.

property by the customer on the condition that the customer, for a fixed price and within a fixed period of time, not to exceed ninety days, has the option to cancel said contract.

Section 12–56–101(7) defines a pawnbroker as follows:

> (7) "Pawnbroker" means a person regularly engaged in the business of making contracts for purchase or purchase transactions in the course of his business.

Historically, a pawnbroker was defined "as a person whose business is to lend money, usually in small sums, on security of personal property deposited with him or left in pawn," and a "pawn" was described as "a bailment of goods to a creditor as security for some debt or engagement; a pledge." *Black's Law Dictionary* 1284 (4th ed. 1951). Similarly, a "pawnbroker" is described as "one that loans money on the security of personal property pledged in his keeping" and a "pawn" is "something delivered to or deposited with another as security for a loan." *Webster's Third New International Dictionary* 1658 (1986).

■ Larson argues that the state statute determines the rights of the parties. This Court disagrees. In the first place, the statute here does not purport to define the nature of the agreement between the parties *per se*, i.e., whether the contract is a security agreement or not. The purpose of the state statute is to regulate the business of pawnbrokers, and the definitions contained therein are for use in interpreting the remaining sections. This Court does agree that in applying the Bankruptcy Code the Court must look to state law to determine the property rights of the parties. But this statute does not define such interests.

■ Rather, this Court will look to the contract between the parties and their intent, because no state law on this issue has been presented, and none can be found by the Court.

■ The pawn ticket (receipt) itself refers to the "property *pledged*" and provides that as a "condition of this *pledge* that the property *pledged* may be *redeemed*" [emphasis added]. The use of the terms "pledge" and "redeem" certainly indicate that the transaction is one of a loan and security agreement in accord with historical notions. Also, the Contract for Purchase provides that the Debtor can "receive *my* property by paying the charges set forth" [emphasis added]. This would indicate that the Debtor did not relinquish title to the property, but rather intended that the property be used only as security. These documents were obviously generated and provided by Larson, and must, therefore, be construed against him.

■ Because there is no Colorado law on this issue, this Court will take a hint from other law in the state. It has long been held in connection with real property that a deed or deed of trust given in connection with a loan is, at law, a mortgage and not an absolute conveyance. *See, e.g., Ver Straten v. Worth,* 79 Colo. 30, 243 P. 1104 (1926). In other words, Colorado is a "lien theory" state versus a "title theory" state. This rule was codified by the state legislature in C.R.S. § 38–35–117. That section reads as follows:

> Mortgages, not a conveyance—lien theory. Mortgages, trust deeds, or other instruments intended to secure the payment of an obligation affecting title to or an interest in real property shall not be deemed a conveyance, regardless of its terms, so as to enable the owner of the obligation secured to recover possession of real property without foreclosure and sale, but the same shall be deemed a lien.

Thus, this Court similarly determines that under Colorado law a pawn transaction is not a conveyance of title, but is a secured transaction, and therefore, Larson is a secured creditor who can be dealt with in the Debtors' Amended Plan under 11 U.S.C. § 1322(b)(2). Accordingly, it is

ORDERED that the Objection to Confirmation of Amended Chapter 13 Plan filed by Len Larson is denied and overruled. The Court will, by a separate document, order that the Amended Plan be confirmed.