**In re Clifton Franklin BURNSED Jeanette Jackson Burnsed PDBA Middleburg Thrift Shop, Debtors.**

**Bankruptcy No. 98–4801–BKC–3F3.**

United States Bankruptcy Court, M.D. Florida, Jacksonville Division.

Aug. 14, 1998.

Albert K. Mickler, Jacksonville, FL, for Debtors.

Lance Paul Cohen, Jacksonville, FL, for Movant.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

JERRY A. FUNK, Bankruptcy Judge.

This Case came before the Court on a Motion for Relief from the Automatic Stay filed by Auto Acceptance Corp. ("Movant"). After a hearing on August 3, 1998, the Court enters the following Findings of Fact and Conclusions of Law.

### FINDINGS OF FACT

On May 25, 1998, Clifton F. and Jeanette J. Burnsed ("Debtors") renewed a motor vehicle title loan contract with Movant. (Appendix 1). Pursuant to this contract, Debtors pledged their title to a 1995 Dodge Ram as collateral in exchange for a $4,770.00 loan. Debtors were to repay this loan by June 24, 1998 in the amount of $5628.60, representing the principal plus a fee of eighteen percent (18%) per month. On May 29, 1998, Clifton F. Burnsed renewed a separate motor vehicle title loan contract with Movant. (Appendix 2). Pursuant to this contract, Debtors pledged their title to a 1985 Toyota Van as collateral in exchange for a $500.00 loan. Debtors were to repay this loan by June 29, 1998 in the amount of $590.00.

The contracts provided that Movant has a security interest in the bailment of the certificates of title to the motor vehicles and that:

> [I]n the event Pledgor is in default on the performance of Pledgor's obligations under this agreement Lender shall have the right, without notice or legal action, to lawfully and without breach of the peace enter any premises where the pledged motor vehicle may be found and to lawfully and without breach of the peace take possession of same, including any equipment or accessories thereon. The motor vehicle

that is security for this Title Loan is subject to sale or disposal if the title has not been redeemed form [sic] Lender or there has been no payment made on this account within 60 days, and Lender shall become vested with all right, title, and interest of myself and/or my assigns to such motor vehicle to hold and dispose of as Lender's own property, without any notice to or demand from me.

(Appendices 1 and 2). A supplemental policy letter provided Debtors three options upon the thirty (30) day notes maturing: (1) pay off the note in full, (2) pay the redemption premium and renew the principal for thirty days, or (3) reduce the principal and pay the redemption premium and renew the balance thirty days. (Appendix 3). Debtors proceeded under the second option and continued to roll over these loans from month to month since late 1997.

On June 15, 1998, Debtors filed a petition for relief under Chapter 13 of the Bankruptcy Code. (Doc. 1). Debtors served notice of filing to Movant on June 24, 1998. (Doc. 7). On June 30, 1998, Debtors filed their Chapter 13 Plan providing for monthly payments of $1,012.55 for a period of sixty months. (Doc. 10). The plan provided that Movant be paid $114.13 monthly on the secured claim of $5,628.60 on Debtors' 1995 Dodge Ram and $4.06 monthly on the secured claim on Debtors' 1985 Toyota van. (Doc. 10). Debtors' Chapter 13 Plan valued the 1995 Dodge Ram at $7,750.00 with $5,628.60 attached debt and valued the 1985 Toyota van at $200.00 with $590.00 attached debt. (Doc. 8).

On July 10, 1998, Movant filed a Motion for Relief from the Stay, claiming the title loan contract required Debtors to redeem on or before June 24, 1998.[1] (Doc. 12). Movant also claims that the Debtors have sixty (60) days from filing their Chapter 13 Case to redeem their vehicles and that failure to redeem by August 14, 1998 would result in the vehicles ceasing to be property of the Bankruptcy Estate.

Debtors set forth a number of arguments in response to Movant's claim that the motor vehicles will cease to be property of the Estate on August 14, 1998. First, Debtors claim the title loan transactions are collateralized loans covered by Article IX of the Uniform Commercial Code. Fla. Stat. Ann. § 679 (West 1998). Second, Debtors claim the contracts are *void ab initio* because Movant failed to follow the provisions of Florida Statute Chapter 538 governing title loan agreements. Finally, Debtors claim that the sixty day period under 11 U.S.C. § 108(b) is applicable to the trustee only and cannot be used by a creditor to compel performance.

### CONCLUSIONS OF LAW

The automatic stay operates to enjoin a creditor from attempting to possess or to exercise control over property of a bankruptcy estate once a petition has been filed. 11 U.S.C. § 362 (1998). "Property of the estate" is defined broadly to include "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1) (1998). Deciding whether a debtor's interest constitutes "property of the estate" is a federal question. *In re Lewis (Charles R. Hall Motors, Inc. v. Lewis)*, 137 F.3d 1280, 1282 (11th Cir.1998). However, "the nature and existence of the [debtor's] right to property is determined by looking at state law." *Southtrust Bank of Alabama v. Thomas (In re Thomas)*, 883 F.2d 991, 995 (11th Cir.1989).

A. The transactions between the parties created security interests.

This Court finds the parties intended to create a security interest. Fla. Stat. Ann. § 679.102 (West 1998). "To create a security interest, parties need only evidence an intent to establish a security agreement. No particular words need be used to evidence the security interest. Rather, the language of the instrument must simply 'lead [ ] to the logical conclusion that it was the intention of the parties that a security interest be created.'" *Gibson v. Resolution Trust Corp.*, 51 F.3d 1016, 1022 (11th Cir.1995) (citations omitted). The contracts state that the "Lender will have a security interest in the

---

1. Movant's motion claims that Debtor was required to redeem both loans by June 24, 1998, however, the title loan contract for the 1985 Toyota van required payment by June 29, 1998.

bailment of the title" and that "the Motor Vehicle that is security for this title loan ...." (Appendices 1 and 2). Additionally, when the notes mature and without the permission of the Movant, Debtors have three options pursuant to the policy letter. (Appendix 3). The title loan transactions are loans where Movant is secured by the titles of Debtors' motor vehicles. The Court finds for the purpose of this relief from stay motion, in both contracts, that the parties created a security interest and that Movant is a secured party.

### B. Providing for security interests in Chapter 13 plans.

Congress added Chapter 13 to the Bankruptcy Code to help debtors protect their assets from liquidation under Chapter 7 and to provide debtors with a fresh start after the bankruptcy process. *Bank One, Chicago v. Flowers,* 183 B.R. 509, 515 (N.D.Ill.1995). To achieve this goal, debtors are allowed to own property free and clear of creditors' liens after designing and completing a plan of reorganization. *Id.* Facilitating this goal, 11 U.S.C. § 1322 allows a debtor to "modify the rights of holders of secured creditors, other than a claim secured only by a security interest in real property that is the debtor's principal residence...." 11 U.S.C. § 1322 (1998).

In this case, Movant's claim is secured by the titles to Debtors' motor vehicles, not Debtors' principal residence and § 1322(b)(2) therefore permits Debtors' Chapter 13 Plan to modify the "rights" of Movant's secured claims. The Court finds the title loan contracts and policy letters create a security interest in the motor vehicles which can be provided for under their Chapter 13 Plan. However, the Court must look to state law in order to determine what "rights" Movant possesses under state law. *Bank One, Chicago v. Flowers,* 183 B.R. at 516. A debtor's interest in property for the purposes of determining property of a bankruptcy estate is determined by state law. *Butner v. United States,* 440 U.S. 48, 55, 99 S.Ct. 914, 918, 59 L.Ed.2d 136 (1979).

### C. Movant's interests under Florida state law.

Florida Statutes Chapter 538 regulates trade, commerce, investments and solicitations of secondhand dealers. Fla. Stat. Ann. § 538 (West 1998). This section defines a "title loan" as "a loan of money secured by bailment of a certificate of title to a motor vehicle. A title loan is not a pawn if the secondhand dealer does not maintain physical possession of the vehicle throughout the term of the transaction." Fla. Stat. Ann. § 538.03(1)(i) (West 1998). Secondhand dealers include any persons engaged in the business of entering title loan agreements. Fla. Stat. Ann. § 538.03(1)(a) (West 1998).

Florida Statutes Chapter 538 requires that secondhand dealers entering title loan contracts maintain physical possession of the motor vehicle title and that the owner maintain possession of, or control over, the motor vehicle throughout the transaction. § 538.06(5) (West 1998). A motor vehicle, which is security for a title loan, is subject to sale or disposal if it is a title loan and the property has not been repurchased from the pawnbroker or the title redeemed from the title lender or there has been no payment made on account within 60 days. § 538.16(1) (West 1998). A secondhand dealer engaged in a motor vehicle title loan transaction may repossess the motor vehicle upon failure of the owner to redeem the title. § 538.06(5)(d) (West 1998).

These motor vehicle title loans are just loans secured by possession of the title and not the vehicle. Jarret C. Oeltjen, *Florida Pawnbroking: An Industry in Transition,* 23 Fla. St. U.L.Rev. 995, 1006 (Spring 1996). Oeltjen states:

> [I]n many respects, a title loan is virtually indistinguishable from a more traditional loan using an automobile as collateral, i.e. a "secured transaction." In the traditional setting, as in the title loan arena, the customer/ borrower retains possession, and the lender notes its security interest on the title and retains possession of that title. However, these two forms of the same type of title transaction are also very different in cost to the borrower and degree of protection of the borrower's interest.

A conventional loan using an automobile as collateral would be subject to the Florida usury law and its eighteen percent per annum interest ceiling. A title loan is subject to a twenty-two ceiling, that is, twenty-two percent per month.

If the debtor defaults on either its secured loan or its title loan, the respective lender has repossession of the collateral as an available remedy. But here the similarity ends. First, the repossession of secured loan collateral is expressly subject to the "no breach of the peace rule," which the repossession of title loan collateral is not. Second, the secured loan collateral can be sold only at a commercially reasonable sale after reasonable notice to the debtor, while the only restriction on the sale of title loan collateral is that it be sold through a licensed motor vehicle dealer, an illusory protection at best. Finally, upon sale of secured loan collateral, the debtor is entitled to any surplus of the sales proceeds over the loan balance plus expenses of sale and repossession, but the debtor is also liable for any deficiency. After repossession of title loan collateral, the debtor is neither entitled to a sales surplus nor liable for a sales deficiency.

23 Fla. St. U.L.Rev. at 1005–06.

On June 15, 1998, prior to payment being due under both title loan contracts, Debtors filed their Petition. Debtors actually possessed both motor vehicles and were not in default on the contracts prior to filing. Movant held the title to the vehicles as security for the loans.

In a case involving a title loan contract, a lender was allowed to repossess a vehicle, despite the automatic stay being in effect. *In re Walker,* 204 B.R. 812 (Bankr.M.D.Fla. 1997). In *Walker,* the debtor defaulted on the title loan agreement, and the vehicle was repossessed prior to filing his second Chapter 13 petition. 204 B.R. at 814. Thus, the debtor's only rights to the vehicle were the rights of redemption under the terms of the contract and 11 U.S.C. § 108(b). The contract redemption period, governed by Fla. Stat. Ann. § 538.16(1) (West 1998), gives the debtor sixty days after entering the contract to redeem the vehicle's title. However,

should a debtor file a bankruptcy petition before the right to redeem expires, the debtor is allowed sixty days from the date of filing to redeem the property. 11 U.S.C. § 108(b) (1998). In *Walker,* because the debtor failed to redeem his vehicle before these redemption periods expired, the debtor's interest in the vehicle terminated. 204 B.R. at 817.

The essence of *Walker* is that after default on a title loan contract in the state of Florida, the debtor's only property interests are the rights of redemption governed by the contract under by Fla. Stat. Ann. § 538.16 and 11 U.S.C. § 108(b). In the present case, the Debtors maintained possession of the vehicles and did not default on the contracts at the time they filed their Petition.

The Eleventh Circuit recently addressed the issue of a debtor's property rights in an automobile repossessed prior to the filing of a petition. *Charles R. Hall Motors, Inc. v. Lewis,* 137 F.3d 1280 (11th Cir.1998). The Court found that the debtor lacked title and possession at the time of filing, but did have a right to redeem. *Id.* at 1284. This right of redemption became part of the debtor's bankruptcy estate because the debtor possessed that right at the time of filing his petition. *Id.* However, the "mere existence of the estate's ability to redeem the automobile" does not render the automobile itself "property of the estate." *Id.* This redemption right requires "certain affirmative steps to change the otherwise dormant right to redeem repossessed collateral into a meaningful ownership interest." *Id.*

As stated above, Debtors had possession at the time of filing. Ownership of the vehicle did not transfer because Movant had not repossessed the vehicle nor had the statutory right to do so become available. Therefore, the Estate's property interest in the vehicles were ownership rights and not mere rights of redemption.

A similar issue to the one in the present Case was addressed in *In re Lopez,* 163 B.R. 189 (Bankr.D.Col.1994). That case involved a pawnbroker objecting to confirmation of a Chapter 13 Plan. *Id.* The pawnbroker argued that the Colorado statute concerning pawn-

brokers determined the rights of the parties. *Id.* The court disagreed, stating:

> [I]n the first place, the statute here does not purport to define the nature of the agreement between the parties per se, i.e., whether the contract is a security agreement or not. The purpose of the state statute is to regulate the business of pawnbrokers, and the definitions contained therein are for use in interpreting the remaining sections. This Court does agree that in applying the Bankruptcy Code the Court must look to state law to determine the property rights of the parties. But this statute does not define such interests.

163 B.R. at 191.

Just as in *Lopez*, the statute here does not purport to define the nature of the agreement between the parties. The recently enacted Florida statute regulating the trade, commerce, investments and solicitations of secondhand dealers does not define what property interest each party has in the motor vehicles before default. Further, the Florida legislators enacting this statute have not excluded this title loan transaction from regulation under the Uniform Commercial Code. Fla. Stat. Ann. § 679.104 (West 1998).

## CONCLUSION

As stated above, an estate's property interest is governed by state law. Florida's state law provides a statutory scheme for title loan contracts, but does not address the interest of the parties prior to default. The Court finds that Movant is the holder of a secured claim for the purposes of this Motion For Relief From the Stay and is entitled to adequate protection, but does not consider the extent or validity of the lien. Such a determination would be made in a subsequent adversary proceeding should the parties choose to do so. This secured claim can be modified by the Debtors' Chapter 13 Plan under 11 U.S.C. § 1322(b)(2). The Court does not address the parties' other arguments in this Opinion. As such, those arguments remain intact without prejudice to parties, raising same through adversary proceeding or at confirmation. A separate Order will be entered in accordance with the foregoing.

# APPENDIX 1

**Creditor/Lender** *AUTO ACCEPTANCE CORPORATION*

| OFFICE USE ONLY |
|---|
| 858.60 |

ADDRESS: 398 Everett Ave Middleburg, FL 32068

**FLORIDA MOTOR VEHICLE TITLE LOAN CONTRACT**

PAYMENT DUE ON OR BEFORE: 6-24-98   OFFICE PHONE 291-5088

Pledged Goods: (The following described motor vehicle and the certificate of title issued by the Motor Vehicle Department).

Name (Pledgor) Clifton F. Burnsed
Jeanette J. Burnsed

Address (Pledgor) 1921 Candlewood Ct
Middleburg, FL 32068

Home Phone (904) 282-7805   Work Phone ( )

Identification (Pledgor) Type FDL-HL   Number B652-706-38-366-0

| | # 3 | Contract # 3502-03 |
|---|---|---|
| | Date 5-25-98 | Time | Maturity Date 6-24-98 |
| DOB 10-6-30 12-7-47 | Eyes/Hair 82/89 | Whght/Hgt 57 | Race W | Sex M F |
| | | Pager ( ) | |

| MATURITY DATE 6-24-98 | Description of Pledged Motor Vehicle | | |
|---|---|---|---|
| | Year 1995 | Make Dodge | Model Ram-Ext-Cab |
| **AMOUNT FINANCED** The amount of credit provided to you or on you behalf. $ 4770.00 | Color White | License Number USN-700 | Title Certificate Number 68180823 |
| **FINANCE CHARGE** The dollar amount the credit will cost you $ 858.60 | Vehicle Identification Number 3B7HC13Z9SM178564 | | Last Date Title Issued 3-27-97 |
| **TOTAL OF PAYMENTS** The amount required to redeem loan on maturity date. $ 5628.60 | Recorded Lien Holder  NONE | | Pledgor's Initials  CFB |
| **ANNUAL PERCENTAGE RATE** The cost of your credit as a yearly rate  216 % | SECURITY: Lender will have a security interest in the bailment of a certificate of title to the motor vehicle described above PREPAYMENT: If you pay off early you will not be entitled to a refund of part of the finance charge ADDITIONAL INFORMATION: See your contract for any additional information concerning nonpayment and default and prepayment refunds or penalties. | | |
| **PAYMENT SCHEDULE** 1 @ $ 5628.60 | Itemization of the Amount Financed $ 4770.00 | Amount given to you directly $ 0 | Amount Refinanced $ 4770.00 |

I, the Pledgor, acknowledge the Annual Percentage Rate and charges of this loan  Pledgor's Initials  CFB

Pledgor hereby pledges complete title of this, motor vehicle to Lender for the repayment of the sum of the Amount Financed, the receipt of which is hereby acknowledged, plus the FINANCE CHARGE and any other lawful charges, and Pledgor agrees to warrant and defend the title  Pledgor agrees that Pledgor is indebted to lender for the Total of Payments

FINANCE CHARGES are due monthly, in the event Pledgor is in default on the performance of Pledgor's obligations under this agreement Lender shall have the right, without notice or legal action, to lawfully and without breach of the peace enter any premises where the pledged motor vehicle may be found and to lawfully and without breach of the peace take possession of same, including any equipment or accessories thereon  The motor vehicle that is security for this Title Loan is subject to sale or disposal if the title has not been redeemed form Lender or there has been no payment made on this account within 60 days, and Lender shall become vested with all right, title, and interest of myself and/or my assigns to such motor vehicle to hold and dispose of as Lender's own property, without any notice to or demands from me

Pledgor warrants that the motor vehicle pledged is not stolen, that the Pledgor has not received the motor vehicle by fraud, that the motor vehicle has no liens or encumbrances, including liens, for past-due child support, against it, that the Pledgor is not in voluntary or involuntary bankruptcy and is not anticipating filing a bankruptcy proceeding of any type, Pledgor asserts that Pledgor is at least 18 years of age

Pledgor agrees to Maintain the pledged motor vehicle in good working order, and to assume the entire responsibility of all damages due to the operation of the vehicle including but not limited to repairs, judgements, suits, attorney's fees, court costs, and any expenses that may be incurred by the use of the vehicle, during said loan and redemption periods  Lender shall not be responsible in case of loss or damage to said motor vehicle by reason of fire, breakage  robbery or burglary  No loss, damage, or destruction of the described motor vehicle shall release Pledgor from the obligations hereunder.

Pledgor agrees to keep the described motor vehicle free of all liens, taxes, and encumbrances (except those securing this title loan contract), and any cost expended by Lender in release or discharge thereof shall be paid by Pledgor

Pledgor agrees to not use said vehicle in violation of any statute or ordinance, or for hire, and will not, without express permission of Lender, permanently remove said vehicle from the state in which the Pledgor resides on the date hereof  Said vehicle will be kept at Pledgor's residence address as stated above and Pledgor will notify Lender promptly of any change in the location of said residence

If possession of said vehicle is taken by or given up to Lender, or said vehicle is sold in the manner described above or in any other manner, Pledgor will properly execute and deliver to Lender any documents which are now required or may be hereafter required by any state motor vehicle law for recording transfer of title

If the title loan contract is lost, destroyed or stolen, the Pledgor shall so notify the lender in writing, and receipt of the notice shall invalidate the Pledgor's copy of this title loan contract, unless such motor vehicle has already been redeemed  Before delivering such motor vehicle or issuing a new title loan contract, the lender shall require the Pledgor to make a written statement of the loss  destruction or theft of the title loan contract

If any court determines that any term of this agreement violates any law, the parties agree that each such term will be modified to comply with the law

Time is of the essence in this agreement  If Pledgor(s) fails to pay per this agreement the vehicle is subject to immediate repossession   Pledgor(s) Initials  CFB

I, the undersigned, have carefully read the terms and conditions of this contract and agree to them. I, the undersigned, have also read and understand the charges for this loan and agree to them.

Under penalty of perjury I declare that I have read the forgoing document and that the facts in it are true.

X _____
SIGNATURE ON REDEMPTION

X _Clifton F. Burnsed_
PLEDGOR'S SIGNATURE

X _Miriam HEhrisman_
LENDER'S SIGNATURE

X _____
PLEDGOR'S SIGNATURE

WHEN MAKING PAYMENTS, NO PERSONAL CHECKS ACCEPTE·  · VERBAL AGREEMENTS FOR ADDITIONAL DAYS ARE NOT BINDING

# APPENDIX 2

### Creditor/Lender **AUTO ACCEPTANCE CORPORATION**

ADDRESS: *3988 Everett Ave, Middleburg, FL 32068*

**FLORIDA MOTOR VEHICLE TITLE LOAN CONTRACT**

PAYMENT DUE ON OR BEFORE: 6-29-98    OFFICE PHONE *291-5088*

| OFFICE USE ONLY |
|---|
| 90.00 |

Pledged Goods: (The following described motor vehicle and the certificate of title issued by the Motor Vehicle Department).

Name (Pledgor) *Clifton F. Burnsed*
Address (Pledgor) *1921 Candlewood Ct*
*Middleburg, FL 32068*

Home Phone *(904) 282-7805*   Work Phone ( )

Identification (Pledgor) Type: *FDL #*   Number *B625-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*

| # | 3 | Contract # 3337-04 |
|---|---|---|
| Date | Time | Maturity Date |
| 5-30-98 | 10:20 am | 6-29-98 |
| DOB | Eyes/Hair | Wght/Hgt | Race | Sex |
| 10-6-38 | Br/Rd | 57 | W | m |
| | Pager ( ) | |

**Description of Pledged Motor Vehicle**

| **MATURITY DATE** 6-29-98 | Year 1985 | Make Toyota | Model Van |
|---|---|---|---|
| **AMOUNT FINANCED** The amount of credit provided to you or on your behalf. $500.00 | Color Brown | License Number TPN-83J | Title Certificate Number 41965481 |
| **FINANCE CHARGE** The dollar amount the credit will cost you. $90.00 | Vehicle Identification Number JT3YR22VSF5078495 | | Last Date Title Issued 10-13-95 |
| **TOTAL OF PAYMENTS** The amount required to redeem loan on maturity date. $590.00 | Recorded Lien Holder NONE | | Pledgor's Initials *CFB* |
| **ANNUAL PERCENTAGE RATE** The cost of your credit as a yearly rate 216 % | SECURITY: Lender will have a security interest in the document of a certificate of title to the motor vehicle described above. PREPAYMENT: If you pay off early, you will not be entitled to a refund of part of the finance charge. ADDITIONAL INFORMATION: See your contract for any additional information concerning nonpayment and default and prepayment refunds or penalties. | | |
| **PAYMENT SCHEDULE** 1 @ $590.00 | Itemization of the Amount Financed $500.00 | Amount given to you directly $0 | Amount Refinanced $500.00 |

I, the Pledgor, acknowledge the Annual Percentage Rate and charges of this loan. Pledgor's Initials *CFB*

Pledgor hereby pledges complete title of this motor vehicle to Lender for the repayment of the sum of the Amount Financed, the receipt of which is hereby acknowledged, plus the FINANCE CHARGE and any other lawful charges, and Pledgor agrees to warrant and defend the title. Pledgor agrees that Pledgor is indebted to lender for the Total of Payments.

FINANCE CHARGES are due monthly. In the event Pledgor is in default on the performance of Pledgor's obligations under this agreement Lender shall have the right, without notice or legal action, to lawfully and without breach of the peace enter any premises where the pledged motor vehicle may be found and to lawfully and without breach of the peace take possession of same, including any equipment or accessories thereon. The motor vehicle that is security for this Title Loan is subject to sale or disposal if the title has not been redeemed from Lender or there has been no payment made on this account within 60 days, and Lender shall become vested with all right, title, and interest of myself and/or my assigns to such motor vehicle to hold and dispose of as Lender's own property, without any notice to or demands from me.

Pledgor warrants that the motor vehicle pledged is not stolen, that the Pledgor has not received the motor vehicle by fraud, that the motor vehicle has no liens or encumbrances, including liens, for past-due child support, against it, that the Pledgor is not in voluntary or involuntary bankruptcy and is not anticipating filing a bankruptcy proceeding of any type. Pledgor asserts that Pledgor is at least 18 years of age.

Pledgor agrees to Maintain the pledged motor vehicle in good working order and to assume the entire responsibility of all damages due to the operation of the vehicle including but not limited to repairs, judgements, suits, attorney's fees, court costs, and any expenses that may be incurred by the use of the vehicle. During said loan and redemption periods Lender shall not be responsible in case of loss or damage to said motor vehicle by reason of fire, breakage, robbery or burglary. No loss, damage, or destruction of the described motor vehicle shall release Pledgor from the obligations hereunder.

Pledgor agrees to keep the described motor vehicle free of all liens, taxes and encumbrances (except those securing this title loan contract), and any cost expended by Lender in release or discharge thereof shall be paid by Pledgor.

Pledgor agrees to not use said vehicle in violation of any statute or ordinance, or for hire, and will not, without express permission of Lender, permanently remove said vehicle from the state in which the Pledgor resides on the date hereof. Said vehicle will be kept at Pledgor's residence address as stated above and Pledgor will notify Lender promptly of any change in the location of said residence.

If possession of said vehicle is taken by or given up to Lender, or said vehicle is sold in the manner described above or in any other manner, Pledgor will properly execute and deliver to Lender any documents which are now required or may be hereafter required by any state motor vehicle law for recording transfer of title.

If the title loan contract is lost, destroyed or stolen, the Pledgor shall so notify the lender in writing, and receipt of the notice shall invalidate the Pledgor's copy of this title loan contract, unless such motor vehicle has already been redeemed. Before delivering such motor vehicle or issuing a new title loan contract, the lender shall require the Pledgor to make a written statement of the loss, destruction or theft of the title loan contract.

If any court determines that any term of this agreement violates any law the parties agree that each such term will be modified to comply with the law.

Time is of the essence in this agreement. If Pledgor(s) fails to pay per this agreement the vehicle is subject to immediate repossession.    Pledgor(s) Initials *CFB*

I, the undersigned, have carefully read the terms and conditions of this contract and agree to them. I, the undersigned, have also read and understand the charges for this loan and agree to them.

Under penalty of perjury I declare that I have read the forgoing document and that the facts in it are true.

X _____
SIGNATURE ON REDEMPTION

X *Clifton F Burnsed*
PLEDGOR'S SIGNATURE

X *Miriam McClionon* 5-30-98
LENDER'S SIGNATURE

X _____
PLEDGOR'S SIGNATURE

## APPENDIX 3

# AUTO ACCEPTANCE CORPORATION

### "WE DO FLORIDA TITLE LOANS"
#### • You Keep Your Car •

DEAR CUSTOMER:

CONGRATULATIONS ON CHOSING AUTO ACCEPTANCE CORPORATION FOR, YOUR TITLE LOAN. TO MAKE SURE YOUR EXPERIENCE WITH AUTO ACCEPTANCE CORPORATION GOES AS SMOOTHLY AS POSSIBLE WE HAVE LISTED OUR POLICIES CONCERNING YOUR LOAN. IF YOU READ AND FOLLOW THESE POLICES IT WILL ENSURE THAT NO PROBLEMS OCCUR WITH YOUR ACCOUNT.

#1) ONLY CASH, MONEY ORDERS OR BANK CASHIERS CHECKS WILL BE ACCEPTED FOR PAYMENT. NO PERSONAL CHECKS ACCEPTED!

#2) YOUR DUE DATE WILL FALL EVERY 30 DAYS, STARTING WITH THE DATE THAT YOU BORROWED THE MONEY. THERE ARE NO GRACE PERIODS ON THESE DUE DATES. IF YOU CANNOT COME TO THE OFFICE ON YOUR DUE DATE, YOU MUST NOTIFY US IN ADVANCE. FAILURE TO NOTIFY THE OFFICE IN ADVANCE WILL SUBJECT THE VEHICLE TO REPOSSESSION.

#3) WHEN PAYING OFF YOUR ACCOUNT, IT MUST BE PAID ON THE DUE DATE TO AVOID ANOTHER MONTHS CHARGES. IF YOU ARE ONE (1) DAY LATE, YOU WILL BE CHARGED FOR ANOTHER MONTH. THIS IS COMPANY POLICY.

#4) IN THE EVENT YOU HAVE A CHANGE OF ADDRESS OR PHONE NUMBER, YOU MUST CONTACT THIS OFFICE IMMEDIATELY. IF WE ARE UNABLE TO CONTACT YOU YOUR VEHICLE COULD BE SUBJECT TO REPOSSESSION.

#5) WHEN YOUR THIRTY (30) DAY NOTE MATURES YOU WILL HAVE THREE OPTIONS FOR REPAYMENT. (1) YOU CAN PAYOFF IN FULL, OR (2) PAY THE REDEMPTION PREMIUM AND RENEW THE PRINCIPLE FOR THIRTY (30) DAYS OR (3) REDUCE THE PRINCIPLE & PAY THE REDEMPTION PREMIUM AND RENEW THE BALANCE THIRTY DAYS.

#6) LATE CHARGES WILL BE CHARGED ON ANY ACCOUNT THAT IS OVER THIRTY (30) DAYS WITHOUT BEING REFINANCED.

#7) REMEMBER, OFFICE HOURS ARE 9:30AM TO 5:30PM MONDAY THRU FRIDAY AND 10:00AM TO 2:00PM ON SATURDAYS. THE OFFICE IS CLOSED ON SUNDAYS AND HOLIDAYS AS POSTED.

IF YOU FOLLOW THESE COMPANY GUIDELINES YOU WILL PREVENT ANY PROBLEMS OR MISUNDERSTANDING WITH YOUR ACCOUNT.

I HAVE READ AND UNDERSTAND COMPLETELY THE ABOVE POLICIES.

DATE: 9-12-97

SIGNED: _Clifton F. Burned_

SIGNED: _____

## ORDER DENYING MOTION FOR RELIEF FROM THE STAY

This Case came before the Court on a Motion For Relief From The Stay filed by Auto Acceptance Corp. Based upon the Findings of Fact and Conclusions of Law separately entered, it is

**ORDERED:**

**Motion For Relief From The Stay is denied.**