In re Denise A. BELL, Debtor.

Denise A. Bell, Plaintiff,

v.

Instant Car Title Loans, and M. Regina Thomas, Trustee, Defendants.

Bankruptcy No. 02–63362–PWB.
Adversary No. 02–9117–PWB.

United States Bankruptcy Court,
N.D. Georgia,
Atlanta Division.

June 17, 2002.

G. Alfred Brunavs, Martin & Brunavs, Atlanta, GA, for plaintiff.

John K. Rezac, Holland & Knight, Atlanta, GA, for defendants.

M. Regina Thomas, Atlanta, GA, Chapter 13 Trustee.

### MEMORANDUM OPINION

PAUL W. BONAPFEL, Bankruptcy Judge.

Denise A. Bell, the Chapter 13 Debtor (the "Debtor"), filed this adversary proceeding against Bethenod and Associates, Inc., d/b/a Instant Car Title Loans[1] (the "Pawnbroker") seeking turnover of her pawned motor vehicle, a 1999 GMC Jimmy. Pawnbroker took possession of the vehicle on March 26, 2002, one day prior to the filing of Debtor's Chapter 13 petition but several months after December 16, 2001, the expiration of the grace period for its redemption under O.C.G.A. § 44–14–403(b)(3). This is a "core proceeding" pursuant to 28 U.S.C. § 157(b)(2)(E), (H) and (O) over which the Court has jurisdiction pursuant to 28 U.S.C. § 1334 and Local Rule 83.7, ND Ga.

After Pawnbroker answered the complaint, but before commencement of discovery, the Court held an expedited hearing on May 16, 2002, on Debtor's request for immediate turnover of the vehicle. Under Part VII of the Federal Rules of Bankruptcy Procedure and the Federal Rules of Civil Procedure applicable to this adversary proceeding, Debtor's expedited request for an order compelling the immediate return of the vehicle prior to a final trial on the merits is, in substance and effect, a request for a preliminary injunction pursuant to FED. R. BANKR. P. 7065, which generally incorporates the provisions of FED. R. CIV. P. 65. It is appropriate to frame the issues in that procedural context.

■ To be entitled to a preliminary injunction, a plaintiff must demonstrate that she is likely to prevail on the merits; that she will suffer irreparable harm in the absence of the grant of immediate injunctive relief; that the potential harm to the plaintiff outweighs any potential harm the injunction may do to the defendant; and that, if issued, the injunctive relief will not be adverse to the public interest. *E.g.,* *McDonald's Corp. v. Robertson,* 147 F.3d 1301, 1306 (11th Cir.1998); *U.S. v. Lambert,* 695 F.2d 536 (11th Cir.1983).

At the hearing, the parties agreed on certain facts. The facts presented show that Debtor has clearly satisfied the last

---

1. The complaint was filed against "Instant Car Title Loans." An answer was filed by Bethenod and Associates, Inc., d/b/a Instant Car Title Loans. The parties have not raised any issue concerning this discrepancy and, therefore, the Court concludes that the proper defendant is before the Court.

three requirements for issuance of a preliminary injunction. Resolution of Debtor's request for immediate relief, then, turns on whether Debtor is likely to prevail on the merits of her claim for turnover of the vehicle based on her contention that the pawned and repossessed, but not yet disposed of, vehicle is property of her bankruptcy estate under § 541(a) of the Bankruptcy Code, 11 U.S.C. § 541(a).

Debtor's complaint, as amended, asserts two theories in support of her claim that the vehicle is property of her estate. First, she claims that, because she remains the owner of record on its certificate of title and because Pawnbroker has not disposed of the vehicle, she has a legal or equitable interest that is property of the estate under § 541(a)(1). Alternatively, she asserts that, if her failure to timely redeem the vehicle from the pawn transaction resulted in an automatic forfeiture of her ownership interest to Pawnbroker, the forfeiture is a fraudulent transfer avoidable under 11 U.S.C. § 548.[2] If the transfer of the vehicle is avoidable under § 548, the vehicle is recoverable under 11 U.S.C. § 550 and is property of the estate under 11 U.S.C. § 541(a)(3).

As explained below, the forfeiture of Debtor's ownership interest on December 17, 2001 [3] by operation of Georgia's pawnshop statutes involuntarily terminated her interest prior to the filing of her petition on March 27, 2002. On the petition date, therefore, it is not property of the estate under 11 U.S.C. § 541(a)(1).

The vehicle will be property of the estate under § 541(a)(3) if the forfeiture is avoidable as a fraudulent transfer under § 548(a)(1)(B). To avoid the transfer under § 548(a)(1)(B), Debtor must establish that (1) she made a transfer of her property to Pawnbroker (2) within one year before the filing of her bankruptcy petition (3) for less than a reasonably equivalent value in exchange for the transfer and (4) at the time of the transfer she was insolvent or the transfer rendered her insolvent.[4] The facts adduced at the expedited hearing show that the Debtor has established the first two elements, but the parties and the Court did not completely address the factual issues relating to the vehicle's value or Debtor's insolvency. Although the Court's files and the colloquy at the hearing could provide the basis for determining the value and insolvency issues in Debtor's favor, the informal and expedited nature of the hearing and the pleadings may have precluded the parties

---

2. Immediately prior to the hearing, Debtor amended her complaint to assert a claim to set aside the transfer of the vehicle as a fraudulent transfer. At the hearing, Debtor suggested that the transfer might be avoidable as a preference. Debtor's contention that the transfer is avoidable is most appropriately viewed as a claim under 11 U.S.C. § 548(a)(1)(B). Under theories of notice pleading, the complaint, as amended, may be sufficient to survive a motion to dismiss for failure to state a claim on which relief may be granted, but it appears subject to a motion for a more definite statement. Amended pleadings may be in order as contemplated by the directions in the Order at the end of this opinion.

3. The time to redeem the vehicle expired on December 16. Transfer occurred immediately thereafter, i.e., the next day.

4. The statute also permits recovery if the debtor was in distressed financial circumstances short of insolvency. Thus, a transfer for less than reasonably equivalent value may be avoided if the debtor "was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with the debtor was an unreasonably small capital," or if the debtor "intended to incur, or believed that the debtor would incur, debts that would be beyond the debtor's ability to pay as such debts matured." 11 U.S.C. §§ 548(a)(1)(B)(ii)(II), (III).

from having adequate notice and opportunity to be heard with regard to these issues.

The Court will, therefore, schedule a further hearing on an expedited basis to permit the parties to address those issues. In the meantime, because Debtor has shown some probability of prevailing on the § 548 theory, because a brief additional delay in disposing of the vehicle will not harm Pawnbroker materially, if at all, and because immediate disposition of the vehicle could preclude effective relief to Debtor and result in irreparable injury, the Court will maintain the status quo by enjoining Pawnbroker from disposing of the vehicle pending further hearing and order of the Court.

This memorandum opinion constitutes findings of fact and conclusions of law pursuant to FED. R. CIV. P. 52(a), applicable to this proceeding pursuant to FED. R. BANKR. P. 7052.

I.

On September 17, 2001, Debtor borrowed $4,000 from Pawnbroker and gave Pawnbroker a security interest in her unencumbered 1999 GMC Jimmy. She signed a "Pawn Ticket/Contract and Disclosure/Receipt" (the "Contract") which stated that she could redeem the vehicle within 30 days, on or before October 17, 2001, for $4,818, representing principal of $4,000, a "finance charge" of $800, and filing fees of $18. The annual percentage rate was 243.33 percent. The Contract advised Debtor that she was giving a security interest in the vehicle to Pawnbroker and that her failure to make payments "can result in the loss of the pawned item." The Contract also gave Pawnbroker the right to "sell or keep the item if [Debtor did] not make all payments by the specified maturity date," which it defined as October 17, 2001. Pawnbroker took pos-session of the vehicle's certificate of title and its lien was noted thereon on September 19, 2001.

On the original maturity date, October 17, 2001, Debtor paid the charges then due pursuant to the Contract, but not the principal, and the parties agreed to extend the pawn for 30 days, to a maturity date of November 16, 2001. Debtor did not make any payment on November 16, nor was there any extension of the redemption period. Therefore, the 30 day grace period for the Debtor to redeem the vehicle as provided by O.C.G.A. § 44–14–403(b)(1) expired on December 16, 2001. The amount required to redeem the vehicle at that time was $4,000 principal, an $800 interest charge through the maturity date of November 16, and an additional 12.5 percent interest charge to redeem the vehicle during the grace period, or $500, for a total of $5,300.

After the expiration on December 16 of the grace period for redemption, Debtor filed Chapter 13 Case No. 01–75892 on December 24, 2001. That case was dismissed on March 21, 2002, and during the pendency of that case, Debtor remained in possession of the vehicle. Pawnbroker repossessed the vehicle on March 26, 2002. Debtor filed her second Chapter 13 petition on March 27, 2002, and commenced this adversary proceeding for turnover of the vehicle. At the time of the filing of the latter petition, Debtor's name still appeared on the certificate of title as the owner, with Pawnbroker's security interest duly noted thereon.

Debtor requires the vehicle for transportation to and from work and for other personal and family needs. The vehicle is insured, and Debtor desires to propose a Chapter 13 plan to deal with Pawnbroker's claim to the extent it is valid and secured. Pawnbroker currently has possession of the vehicle and has not demonstrated any

material hardship if disposition of the vehicle is temporarily delayed.

The Court's files reflect that Debtor was insolvent in her first bankruptcy case and that she remains so. Debtor's schedules filed January 22, 2002, in A01–75892, and her schedules filed April 10, 2002, in the present case, reflect that Debtor's liabilities exceed her assets, exclusive of the vehicle at issue in this proceeding.

Debtor contends that the vehicle is worth $16,735, whereas Pawnbroker asserts that the vehicle is worth between $10,000 and $12,000. However, neither party provided any actual evidence of the value of the vehicle.

## II.

As noted above, the critical question in this proceeding is whether the vehicle is property of Debtor's estate. This issue is substantively dispositive because of the consequences that flow if the vehicle is property of the estate. The automatic stay of 11 U.S.C. § 362(a) prevents enforcement of liens against property of the estate. Moreover, a creditor in possession of collateral that is property of the estate must surrender it under 11 U.S.C. § 542(a). Under these provisions, Pawnbroker will be required to turn the vehicle over if it is property of the estate. If it is not, Pawnbroker will be free to dispose of it as it sees fit.

If Debtor ultimately prevails on the merits but there is no preliminary injunction requiring turnover of the vehicle pending such determination, Debtor, her bankruptcy estate, and potentially her creditors will suffer irreparable injury. Debtor will have been denied use of the vehicle which is critical to her transportation needs. The bankruptcy estate and creditors will have lost a valuable asset. Issuance of a preliminary injunction, therefore, is necessary to avoid irreparable injury to Debtor and her estate.

On the other hand, if the preliminary injunction issues and Pawnbroker ultimately prevails, it will then be able to get the vehicle back. In the meantime, provisions of § 363 of the Bankruptcy Code, 11 U.S.C. § 363, will require that Pawnbroker receive adequate protection that will compensate it for any depreciation or other loss arising from Debtor's use. The continuation of insurance coverage will be an essential part of adequate protection. A preliminary injunction, therefore, will not likely result in any material damage to Pawnbroker.

The purpose of Chapter 13, of course, is to provide the Chapter 13 debtor with the opportunity to retain assets, rather than see them liquidated through creditor collection activity or by a bankruptcy trustee in a Chapter 7 liquidation case, through a Chapter 13 plan that pays creditors at least as much as they would receive in a Chapter 7 case. Another important objective of the Bankruptcy Code is to protect the rights of general, unsecured creditors by, among other things, establishing various rights of recovery to the debtor's estate, such as the right to avoid certain transfers of property. At the same time, the Bankruptcy Code protects the interests of secured creditors by requiring adequate protection of their collateral interests in the debtor's property.

The grant of injunctive relief in this case is consistent with all of these objectives. Debtor will have an opportunity to retain her vehicle; the interests of unsecured creditors are preserved to the extent the potential asset is preserved; and Pawnbroker will receive the value of its allowed secured claim as well as adequate protection against loss or depreciation of its collateral. Granting the requested relief, therefore, is not adverse to the public in-

terest and, indeed, furthers the policies of Chapter 13.

Debtor's entitlement to a preliminary injunction, then, depends on her satisfying the first requirement: that she is likely to prevail on the merits of her claim that the vehicle is property of the estate.

Section 1306 of the Bankruptcy Code provides that property of the estate in a Chapter 13 case includes property specified in 11 U.S.C. § 541(a), which defines property of the estate in seven subsections. Two are material here. The first is § 541(a)(1), which provides that property of the estate includes "all legal or equitable interests of the debtor in property as of the commencement of the case." The second is § 541(a)(3), which provides that property of the estate includes any interest in property that the trustee recovers under 11 U.S.C. § 550, among others; section 550, in turn, authorizes the recovery of property, or its value, from certain transferees if the transfer is avoidable under 11 U.S.C. § 548, among others.

 Whether a debtor has a "legal or equitable interest" in property for purposes of § 541(a)(1) is determined by reference to state law. *Butner v. United States*, 440 U.S. 48, 55, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979). The Georgia law applicable to this transaction is found in three sections of the Official Code of Georgia Annotated.[5] O.C.G.A. § 44–12–130 contains definitions of, among other things, a "pawn transaction;" O.C.G.A. § 44–12–131 governs the length of a pawn transaction and the interest, fees, and charges that a pawnbroker may charge in a pawn transaction; and O.C.G.A. § 44–14–403 deals with the pawnbroker's lien rights, the borrower's right to redeem the pawned property, and the forfeiture of the pawned property to the pawnbroker upon the borrower's failure to redeem it within the specified grace period.

O.C.G.A. § 44–12–130(3) defines a "pawn transaction" as "any loan on the security of pledged goods or any purchase of pledged goods on the condition that the pledged goods may be redeemed or repurchased by the pledgor or seller for a fixed price within a fixed period of time." Although a pledge traditionally requires the creditor to have possession of the pledged property, the statutes permit a borrower to pledge a motor vehicle by providing that the pawnbroker's possession of the vehicle's certificate of title is conclusively deemed to be possession of the vehicle. O.C.G.A. § 44–12–130(5). In this transaction, therefore, the vehicle was "pledged goods." Because the loan was made on that security with conditions for redemption for a fixed price within a fixed period, the transaction was a pawn transaction.

O.C.G.A. § 44–12–131 requires certain terms in a pawn transaction. Under this section, a pawn transaction must be for a 30 day period but may be continued for additional 30 day periods. § 44–12–131(a)(1). During the first 90 days of any pawn transaction or extension or continuation of it, the pawnbroker may charge interest and pawnshop charges for each 30 day period that together do not exceed 25 percent of the principal advanced (an annual rate of 300 percent). § 44–12–131(a)(4)(A). For a transaction beyond 90 days, the limit for each 30 day period is 12.5 percent of the principal amount advanced. § 44–12–131(a)(4)(B). In addition, in a pawn transaction involving a motor vehicle, a pawnbroker can charge certain title, storage, and repossession fees. § 44–

---

**5.** The sections are separately codified but the material provisions of all of them were enacted in the same legislation, and they use the same terminology. *See* 1989 Ga. Laws 819, 1992 Ga. Laws 3245.

12–131(a)(4)(C). Georgia's statute making it a crime to charge interest at a rate greater than five percent per month (equivalent to 60 percent a year), O.C.G.A. § 7–14–18, does not apply to a pawn transaction. *Glinton v. And R, Inc.*, 271 Ga. 864, 524 S.E.2d 481 (1999).

Pawn transactions must be for a period of 30 days, but the maturity date may be extended or continued for additional 30 day periods by written agreement of the parties. O.C.G.A. §§ 44–12–131(a)(1), 44–14–403(b)(2). The Contract here appears to contemplate, but it does not require, extensions of the pawn period, provided that interest, fees, and charges other than principal are paid every 30 days. If the parties do not agree to extend or continue the pawn transaction, however, and if the borrower does not pay the principal, interest, and charges in full to redeem the pawned property by the maturity date (as extended, if applicable), the borrower has an additional grace period of 30 days (in the case of motor vehicles) to redeem the pawned property. § 44–14–403(b)(1), (2). To do so, the borrower must pay the principal, interest, and other charges due on the maturity date plus an additional interest charge of up to 12.5 percent of the principal. § 44–14–403(b)(3).

If the vehicle is not timely redeemed, the statute provides for forfeiture of the borrower's ownership interest. Specifically, O.C.G.A. § 44–14–403(b)(3) provides as follows (emphasis added):

> Pledged goods not redeemed within the grace period *shall be automatically forfeited to the pawnbroker* by operation of this Code section, and any ownership interest of the pledgor or seller shall automatically be extinguished as regards the pledged item.

Pawnbroker here asserts that Debtor's right to redeem the vehicle expired on December 16, 2001 and that, upon her failure to pay the principal, pawn period interest, grace period interest, and other charges then due in order to redeem the vehicle from the pawn (approximately $5,300 consisting of $4,000 principal, $800 pawn period interest, and $500 grace period interest), Debtor's interest in the vehicle automatically and by operation of law, and without any further act on anyone's part, was forfeited to Pawnbroker. As Pawnbroker views the law, Pawnbroker became the owner of a vehicle worth $16,735 (in Debtor's estimation) based on Debtor's failure to pay $5,300 within the grace period the statute provides to redeem it.

Expiration of the grace period does not necessarily mean that Debtor's rights have been terminated. Traditional doctrines of waiver, estoppel, novation, accord and the like might be invoked to demonstrate that the parties by their conduct have necessarily changed the rules that govern their transaction. For example, in *In re Jones*, 206 B.R. 569 (Bankr.M.D.Ala.1997), the court found that a creditor's agreement to forbear with regard to enforcement of a motor vehicle pawn resulted in a secured transaction subject to Alabama's Uniform Commercial Code rather than a pledge under the Alabama Pawnshop Act. However, there is nothing in the evidence presented so far in this case to indicate the applicability of any such principles at this stage of the proceeding.

Under the facts of this case, O.C.G.A. § 44–14–403(3) has precisely the effect that Pawnbroker asserts: forfeiture of the borrower's ownership interest by operation of law upon expiration of the grace period for redemption. On December 16, 2001, Debtor's redemption rights terminated by involuntary forfeiture. The pawn transaction ended. Pawnbroker became the owner on December 17 as a result of the statutorily mandated forfeiture. As be-

tween Debtor and Pawnbroker under Georgia law, therefore, Debtor had no legal or equitable interest in the vehicle and title vested in Pawnbroker.

The fact that the vehicle's certificate of title still named Debtor as its owner does not change this result. As between Debtor and Pawnbroker, Pawnbroker owned the vehicle and Debtor had no continuing interest therein.

Consequently, when Debtor filed her current chapter 13 petition, the vehicle was

not property of the estate under § 541(a)(1). Bankruptcy courts in neighboring jurisdictions have reached the same conclusion based on similar statutes. *E.g., In re Dunlap,* 158 B.R. 724 (M.D.Tenn. 1993); *In re Walker,* 204 B.R. 812 (Bankr. M.D.Fla.1997).[6]

■ The next question is whether the vehicle is property of the estate under § 541(a)(3). This provision states that property that a trustee[7] recovers under

---

**6.** The conclusion may be different when the debtor files the petition prior to default. *See In re Burnsed,* 224 B.R. 496 (Bankr.M.D.Fla. 1998).

**7.** Unlike a Chapter 7 debtor, a Chapter 13 debtor enjoys certain powers otherwise reserved for a trustee. 11 U.S.C. § 1303 specifically provides that "the debtor shall have, exclusive of the trustee, the rights and powers of a trustee under sections 363(b), 363(d), 363(e), 363(f), and 363(*l*), of this title." 11 U.S.C. § 1303. However, neither Section 1303 nor any other code section specifically confers the authority to exercise avoidance powers upon a Chapter 13 debtor. *See Realty Portfolio, Inc. v. Hamilton (Matter of Hamilton),* 125 F.3d 292, 296 (5th Cir.1997) ("There is no specific statutory provision generally authorizing Chapter 13 debtors to exercise trustees' avoidance powers.").

A majority of courts have held that a Chapter 13 debtor lacks standing to exercise avoidance powers. *See In re Stangel,* 219 F.3d 498 (5th Cir.2000) (Chapter 13 debtor lacks standing under 11 U.S.C. § 545); In *In re Merrifield,* 214 B.R. 362, 365 (8th Cir. BAP 1997) (Chapter 13 debtor lacks standing to pursue avoidance action because "statutory language of § 548 expressly confers avoidance powers *exclusively* on the trustee."); *In re Miller,* 251 B.R. 770 (Bankr.D.Mass.2000) (Debtor lacks standing to bring avoidance action under 11 U.S.C. § 547); *In re Cardillo,* 169 B.R. 8 (Bankr.D.N.H.1994) (Debtor lacks standing to bring avoidance action under 11 U.S.C. § 547); *In re Pilgreen,* 161 B.R. 552 (Bankr. M.D.Ga.1989) (Debtor lacks standing to bring avoidance actions under 11 U.S.C. § 547); *In re Colandrea,* 17 B.R. 568 (Bankr.D.Md.1982) (Debtor lacks standing to bring avoidance action under 11 U.S.C. § 547). A handful of

courts have found that a Chapter 13 debtor may exercise avoidance powers. *See, e.g., In re Weaver,* 69 B.R. 554 (Bankr.W.D.Ky.1987); *In re Einoder,* 55 B.R. 319 (Bankr.N.D.Ill. 1985); *In re Boyette,* 33 B.R. 10 (Bankr. N.D.Tex.1983).

Notwithstanding the potential standing problem for a Chapter 13 debtor, other avenues exist for a Chapter 13 debtor's recovery of property. Section 522(h) provides a statutory exception to the doctrine that a chapter 13 debtor lacks standing to bring an avoidance action. Generally, it authorizes a debtor to pursue avoidance claims such as a § 548 fraudulent transfer action to recover involuntarily transferred property that the debtor claims as exempt if the bankruptcy trustee does not. *See Hamilton,* 125 F.3d at 297 ("Congress has specifically authorized narrow exceptions to the general rule that Chapter 13 debtors lack standing to exercise the strong-arm powers of Chapter 13 trustees."). Both the Eighth Circuit and the Ninth Circuit have adopted a five part test to determine whether a debtor may exercise avoidance powers under 11 U.S.C. § 522(h). Under the five part test, a debtor may avoid a transfer if (1) the trustee did not attempt to avoid the transfer; (2) the debtor did not conceal the property; (3) the debtor's transfer of property was involuntary; (4) the debtor seeks to exercise an avoidance power enunciated under 11 U.S.C. § 522(h); and (5) the transferred property could have been exempted if the trustee had avoided the transfer under the provisions of 11 U.S.C. § 522(g). *In re DeMarah,* 62 F.3d 1248, 1250 (9th Cir.1995); *In re Merrifield,* 214 B.R. 362, 365 (8th Cir. BAP 1997). If the Debtor claims an exemption with regard to the vehicle, she has standing to seek its return under § 548. Moreover, a Chapter 13 debtor

§ 550 (among other sections) is property of the estate. Among other things, § 550 permits a trustee who has avoided a transfer of property as a fraudulent transfer pursuant to § 548 to recover the property from the appropriate transferee. In short, therefore, if the transfer of the vehicle to Pawnbroker on December 17, 2001 was a fraudulent transfer avoidable under § 548, the vehicle is property of the estate.

■ A transfer of property is avoidable under § 548(a)(1)(B) if four requirements are met. First, the debtor must have made a transfer of property. 11 U.S.C. § 101(54) defines "transfer" as "every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with property or with an interest in property, including retention of title as a security interest and foreclosure of the debtor's equity of redemption." Second, the transfer must have been made within one year before the filing of the bankruptcy petition. Third, the debtor must have received less than "reasonably equivalent value" in exchange for the transfer of the property. Finally, the debtor must have been insolvent at the time the transfer was made or must have been rendered insolvent as a result of the transfer. § 548(a)(1)(B).[8] A debtor is insolvent when her assets, excluding property that is exempt in the bankruptcy case and that is transferred, concealed, or removed with intent to hinder, delay, or de-

fraud creditors, taken at a fair value, exceed her liabilities. 11 U.S.C. § 101(32).

Arguably, all of the elements for success on the § 548 claim are present here. On December 17, 2001, as Pawnbroker contends and as set forth above, the operation of O.C.G.A. § 44–14–403(b)(3) effected an involuntary transfer, as defined in § 101(54), of Debtor's ownership interest in the vehicle to Pawnbroker in exchange for the amount then due, $ 5,300. *Carter v. H & B Jewelry and Loan (In re Carter),* 209 B.R. 732 (Bankr.D.Or.1997)[9]; 2 COLLIER ON BANKRUPTCY ¶ 101.54. The transfer took place within one year before the filing of the Chapter 13 petition. The current value of the vehicle could be assumed to be $10,000—the lowest value suggested by Pawnbroker at the May 16 hearing. The vehicle would not have been worth less than that on the forfeiture date five months earlier. A vehicle worth $10,000 is not reasonably equivalent in value to an obligation of $5,300. Finally, Debtor's schedules in this and her previous case could demonstrate that she was, and is, insolvent.

If such findings were made, it would follow that the transfer of the vehicle to Pawnbroker is avoidable as a fraudulent transfer under § 548(a)(1)(B), that the vehicle is recoverable from Pawnbroker under § 550, and that the vehicle is property of the estate under § 541(a)(3). Pawnbro-

---

may include provisions in her plan for the prosecution of claims for the recovery of avoidance of fraudulent transfers and payment of claims with the property of the estate thus recovered, 11 U.S.C. § 1322(b)(8), or for use of the property of the estate thus recovered under § 363(b) and § 1306 in order to effectuate the plan. 11 U.S.C. § 1322(b)(10). In any event, one of either the Chapter 13 trustee or Debtor will have standing to assert a § 548 claim. Inasmuch as the Chapter 13 Trustee has been named as a party in this adversary proceeding and could be expected

to assert the claim if Debtor cannot, it is not necessary to decide this issue.

8. *See* note 4 *supra.*

9. The court in *Carter* denied the pawnbroker's motion for summary judgment. Following trial on the merits, the court found that reasonably fair equivalent value had been given in exchange for the transfer and entered judgment in favor of the pawnbroker. *Carter v. H & B Jewelry and Loan (In re Carter),* 212 B.R. 972 (Bankr.D.Or.1997).

ker would be obligated to turn possession of it over pursuant to 11 U.S.C. § 542(a).[10]

As noted earlier, however, the evidence has not been fairly and adequately developed to support findings of fact on the issues of value and insolvency that would be sufficient to grant a preliminary injunction requiring turnover of the vehicle. More definite proof of insolvency and value is necessary. Given the informal and expedited nature of the hearing and the pleadings, justice requires that both parties have ample opportunity to present evidence with regard to these issues to permit their determination in a proper manner. At the same time, the likelihood that Debtor will prevail on the merits based on the current record is high enough to justify maintaining the status quo, taking into account the potential injury that Debtor and the estate will suffer if Pawnbroker disposes of the vehicle as opposed to the minimal, if any, damage Pawnbroker will suffer if disposition is delayed pending a further hearing. A preliminary injunction to that effect shall issue as set forth below.[11]

### ORDER

Based on the foregoing, it is hereby **ORDERED AND ADJUDGED** as follows:

1. The request of Debtor for immediate turnover of the 1999 GMC Jimmy in which she claims an ownership interest is denied, without prejudice.

2. Pawnbroker is hereby enjoined from transferring or disposing of the vehicle, and is further enjoined from any use of the vehicle, pending further order of this court.

3. The Chapter 13 Trustee is named as a party defendant but has not answered, presumably because the complaint seeks no relief against her. The Court directs counsel for the Debtor and the Chapter 13 Trustee to confer within five days with regard to the standing issues addressed in footnote 7 and with regard to whether the Chapter 13 Trustee should be aligned as a party plaintiff. Debtor and the Chapter 13 Trustee are granted leave to file such pleadings, motions, or amendments to Debtor's Chapter 13 Plan, schedules, claim of exemptions, or other papers as they deem appropriate to assert their respective rights and positions with regard to the claim to avoid the transfer of the vehicle within 10 days.

4. The Court will schedule a hearing on notice to the parties to hear evidence with regard to any factual issues relating to Debtor's request for immediate turnover of the vehicle and to hear and determine any objections of Pawnbroker to any motions, pleadings, amendments, or other papers that Debtor or the Chapter 13 Trustee files.

IT IS SO ORDERED.

---

10. Section 542(a) requires turnover of property to the trustee, not the debtor. In a Chapter 13 case that involves rehabilitation of a debtor rather than liquidation of assets, property that would ordinarily be administered by the bankruptcy trustee remains, instead, in the possession and control of the Chapter 13 debtor. The Chapter 13 debtor has the rights of a trustee under 11 U.S.C. §§ 363(b), (d), (e), (f), and (l) to use, sell, or lease property in accordance with the requirements of those sections. 11 U.S.C. § 1303. Thus, a Chapter 13 debtor is entitled to assert turnover claims under 11 U.S.C. § 542(a).

11. No bond is necessary. Fed. R. Bankr.P. 7065. In any event, continued possession by Pawnbroker would obviate the need for a bond.