In the Matter of Jessie JONES, Dianne Jones, Debtors.

Philip A. Geddes, Trustee, Plaintiff,

v.

Mayhall Enterprises, LLC, Defendant.

Bankruptcy No. 03–80914–JAC–13.
Adversary No. 03–80108–JAC–13.

United States Bankruptcy Court,
N.D. Alabama,
Northern Division.

Dec. 15, 2003.

Philip Geddes, Decatur, AL, trustee.

Jeffrey L. Cook, Huntsville, AL, for defendant.

Tammy A. Denson, UAW Legal Services Plan, Huntsville, AL, for debtors.

## MEMORANDUM OPINION

JACK CADDELL, Bankruptcy Judge.

On October 17, 2002, Jessie Jones pawned his 2000 Pontiac Grand Am to Mayhall Enterprises, LLC, doing business as Mayhall Title Pawn ("Mayhall"), in exchange for $1,500.00. The transaction is what is known as a title pawn, that is, the debtor surrendered his automobile certificate of title to Mayhall, but he kept actual possession of the vehicle. Mr. Jones was the sole owner of the vehicle and there were no other liens on same. The pawn contract provided for a November 17, 2002 maturity date. To redeem the title the debtor agreed to pay Mayhall $1,800.00 on or before the maturity date. On November 22, 2002, Mayhall agreed to extend the pawn for an additional 30 days. The second pawn contract provided for a December 22, 2002 maturity date. On December 22, 2002, the debtor failed to pay the balance due. As required by ALA.CODE § 5–19A–6 (1975), the pawn contract included a thirty day grace period following the maturity date in which the vehicle could be redeemed by the debtor. On January 22, 2003, the thirty day grace period expired without payment by the debtor. On March 3, 2003, Mr. Jones and his wife filed for protection under Chapter 13 of the Bankruptcy Code, while still in possession of the automobile.

The debtors listed Mayhall in Schedule D as a creditor holding a secured claim in the amount of $1,800.00 secured by a 2000 Pontiac Grand Am. Their plan proposed to pay the debt at 9% interest over a period of time and retain possession of the vehicle. In Schedule C, Property Claimed as Exempt, the debtors claimed an exemption valued at $4,445.00 in the vehicle.

On June 24, 2003, the trustee filed a complaint against Mayhall seeking a determination that the pawn transaction is an avoidable fraudulent transfer pursuant to 11 U.S.C. § 548 of the Bankruptcy Code or alternatively, that under 11 U.S.C. § 544 that, because the defendant had not perfected its security interest in the vehicle under the Alabama Certificate of Title law

that it was due to be deemed a general unsecured claim in the amount of $1,800.00. On November 3, 2003, this adversary proceeding came before the Court on plaintiff's motion for summary judgment. Mayhall responds that the title pawn contract has matured by its terms without being paid and that under the Alabama Pawnshop Act, ALA.CODE §§ 5-19A-1 through 5-19A-20 (1975), the vehicle became property of the defendant on the maturity date. Mayhall seeks relief from the stay to take possession of the vehicle.

Mayhall concedes that the debtors were likely insolvent at the time Mr. Jones entered into the pawn contract. Mayhall further concedes that the transfer under the pawn contract occurred within one year of the petition filing date. The stipulated value of the car at the time of the pawn was $7,350.00.

Upon due consideration of the pleadings and pursuant to Rule 56(c), the Court finds that there is no genuine issue as to any material fact and hereby renders judgment based upon the facts and the applicable law and in conformity with this memorandum opinion.

### CONCLUSIONS OF LAW

**I As of the commencement of the case, the pawn contract had fully matured. The trustee cannot set aside the transfer under 11 U.S.C. § 544 and the debtor cannot modify the fully matured pawn contract under 11 U.S.C. § 1322(b)(2) of the Bankruptcy Code.**

**A. Pawn transactions and § 1322(b)(2) of the Bankruptcy Code.**

Section 1322(b)(2) of the Bankruptcy Code allows a debtor to "modify the

rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence ..." One of the threshold issues is whether the transaction before the Court is subject to modification under that section. In *Commercial Fed. Mortgage Corp. v. Smith (In re Smith),* 85 F.3d 1555 (11th Cir.1996), the Eleventh Circuit stated that "[s]ection 1322 allows modifications only to the extent there exists something to modify[,][o]nce the debtors' claim to title is extinguished at the foreclosure sale, § 1322(b) is no longer applicable."[1] The Eleventh Circuit concluded that when a debtor files a Chapter 13 petition after his real estate had been foreclosed upon, the debtor could not cure the default by exercising the debtor's statutory right of redemption by installment payments through his Chapter 13 plan over time even though the debtor was still in possession of the real estate. The court ruled that the right of redemption could only be exercised by literally applying Alabama law which requires a lump sum payment within twelve months of the foreclosure sale. In this case, the debtor's right of redemption had expired and the obligation fully matured. There is no default for the debtor to cure. Had the debtor filed bankruptcy before his right to redeem expired, the debtor would have been permitted consistent with *Smith* to pay Mayhall in one lump-sum payment within the allotted time.

One commentator, Judge Keith Lundin, has stated that "[s]ection 1322(b)(2) is broad authority for Chapter 13 debtors to modify the rights of pawnbrokers through

---

1. *Commercial Fed. Mortgage Corp. v. Smith (In re Smith),* 85 F.3d 1555, 1559 (11th Cir.1996)(quoting *In re McKinney,* 174 B.R. 330 (Bankr.S.D.Ala.1994)).

a confirmed plan." [2] The majority of the cases cited by Judge Lundin, however, involve pawn transactions that have not fully matured.[3] In the case of *In re Lopez*, 163 B.R. 189 (Bankr.D.Colo.1994), the bankruptcy court held that a pawn transaction was a secured transaction that could be modified and paid through the debtor's Chapter 13 plan over time. The debtor filed bankruptcy before the pawn contract matured. The bankruptcy court determined that the transaction was in the nature of a loan and security agreement that could be dealt with in the debtor's plan under § 1322(b)(2). Another case, *In re Burnsed*, 224 B.R. 496 (Bankr.M.D.Fla. 1998), involved a Chapter 13 case filed before the pawn contract matured. The debtors proposed to modify the pawnbroker's claim by paying same over the life of the Chapter 13 plan. The bankruptcy court held that the pawn contract was in the nature of a security interest which could be modified under § 1322(b)(2) because the contract stated that the lender would have a security interest and Florida law described the title loan as a loan of money secured by a certificate of title. The debtors had not defaulted on the loans and were still in possession of the vehicles when they filed bankruptcy.

Other cases have held that § 1322(b)(2) cannot be used to manage the claims of a pawnbroker. In *Dunlap v. Cash America Pawn of Nashville (In re Dunlap)*, 158 B.R. 724 (M.D.Tenn.1993), the district court reviewed two consolidated adversary proceedings and held that the debtors lost all interest in pawned property after the redemption period expired. Once the stat-

utory redemption period expires and the pawned goods are not redeemed, "the debtor forfeits 'all right, title and interest of, in and to the pledged property and the debt becomes satisfied.'" [4] After the redemption period expired, the court stated that a debtor cannot cure or modify the pawn contract under § 1322 because this remedy only applies to goods in which the estate retains an interest.

Finally, in the case of *In re Walker*, 204 B.R. 812 (Bankr.M.D.Fla.1997), the bankruptcy court found that the Chapter 13 debtor's right to redeem expired pursuant to § 108(b) of the Bankruptcy Code sixty days after the debtor filed his first bankruptcy petition where the right of redemption had not run when his petition was filed. Section 108(b) of the Bankruptcy Code provides that if nonbankruptcy law fixes a period within which a Chapter 13 debtor may perform an act and such period has not expired before the filing date of the petition, the trustee may perform the act before the later of the end of such period or sixty days after the order for relief. The right to redeem expired while the debtor was in his first bankruptcy case which was then dismissed for failure to make payments. Before the debtor filed his second petition, the pawnbroker repossessed the vehicle. The court held that the debtor's interest in the vehicle terminated by law when the debtor failed to redeem sixty days after the court entered the order for relief in the first bankruptcy. As a result, the truck was not estate property when it was repossessed thereafter,

---

**2.** *See* Keith M. Lundin, *Chapter 13 Bankruptcy*, 3d. Ed. § 117.1, 117–4 (2002).

**3.** *In re Lopez*, 163 B.R. 189 (Bankr.D.Colo. 1994)(case filed before redemption period expired); *In re Davis*, 269 B.R. 914 (Bankr. M.D.Ala.2001)(case filed before redemption period expired); *In re Burnsed*, 224 B.R. 496

(Bankr.M.D.Fla.1998)(case filed while debtors were not in default); *In re Walker*, 204 B.R. 812 (Bankr.M.D.Fla.1997)(case filed before redemption period expired).

**4.** *In re Dunlap*, 158 B.R. at 727.

and it was not protected by the automatic stay.

 In this case, the debtors' interest in the vehicle terminated by law even before the debtors filed bankruptcy. Immediately after the thirty day redemption grace period expired on January 22, 2003 without the obligation being paid, the debtors' right, title, and interest in the vehicle vested in Mayhall pursuant to ALA.CODE § 5–19A–6 and the Alabama Supreme Court cases discussed below. Section 5–19A–6 of the Alabama Pawnshop Act provides for the forfeiture of pledged goods when they are not redeemed within thirty days after the originally fixed maturity date:

§ 5–19A–6. **Redemption or automatic forfeiture of pledged goods.**

A pledgor shall have no obligation to redeem pledged goods or make any payment on a pawn transaction. **Pledged goods not redeemed** within 30 days following the originally fixed maturity date **shall be forfeited** to the pawnbroker **and absolute right, title, and interest in and to the goods shall vest in the pawnbroker.** [emphasis added]

Immediately after January 22, 2003, the debtor forfeited his "absolute right, title and interest" in the vehicle to Mayhall by virtue of ALA.CODE § 5–19A–6.

 There are two Alabama Supreme Court cases which discuss the use of automobile certificates of title in connection with the Alabama Pawnshop Act. In *Floyd v. Title Exchange and Pawn of Anniston, Inc.*, 620 So.2d 576 (Ala.1993), the Alabama Supreme Court first addressed the issue of whether the definition of pledged goods under the Alabama Pawnshop Act includes

motor vehicle certificates of title.[5] The court stated that it was questionable whether an automobile certificate of title was "tangible personal property" as that term is generally understood. The court concluded, however, that the Alabama Pawnshop Act covers the pledge of motor vehicle certificates of title because the Alabama Legislature only specifically excluded choses in action from the definition of pledged goods and certificates of title are not choses in action. Although the Alabama Supreme Court was hesitant in *Floyd* to define a certificate of title as tangible personal property, a mere four months later in *Blackmon v. Downey*, 624 So.2d 1374 (Ala.1993), the same court cited *Floyd* and stated conclusively that "**an automobile certificate of title is tangible personal property within the meaning of the Alabama Pawnshop Act**" and was, thus, not covered by the Alabama Small Loan Act which prohibits usurious interest rates.[6] [emphasis added]

In a case that is similar to the one before the court, a Georgia bankruptcy court held that the debtor no longer had any interest in a pawned automobile on the date she filed bankruptcy. In *Bell v. Instant Car Title Loans (In re Bell)*, 279 B.R. 890 (Bankr.N.D.Ga.2002), the pawnbroker repossessed the debtor's car one day before the debtor filed bankruptcy. The debtor's right to redeem the car expired several months before the debtor filed bankruptcy. The debtor filed a complaint for turnover and argued that she retained a legal or equitable interest in the car that was property of the estate under 11 U.S.C. § 541(a)(1) because the pawnbroker had not yet disposed of the car and the debtor remained the owner of record

---

**5.** Decision written by Justice Maddox with Justices Adams, Houston, Steagall and Ingram concurring. Dissent by Justices Almon and Shores.

**6.** Decision written by Justice Ingram with Justices Hornsby, Almon, Adams and Steagall concurring.

on the certificate of title. Alternatively, the debtor argued that if her failure to timely redeem resulted in an automatic forfeiture of her ownership interest, the forfeiture was a fraudulent transfer under § 548 of the Bankruptcy Code. The pawnbroker argued that the debtor's interest in the vehicle was automatically forfeited upon the debtor's failure to redeem during the grace period.

The bankruptcy court found that the pawn transaction ended when the right to redeem ended. At that point, the pawnbroker became the owner of the car as a result of the statutorily mandated forfeiture. The fact that the certificate of title still named the debtor as owner did not change this result. "As between Debtor and Pawnbroker, Pawnbroker owned the vehicle and Debtor had no continuing interest therein."[7] The debtor's ownership interest in the car transferred to the pawnbroker immediately after the time to redeem the vehicle expired under Ga.Code Ann. § 44–14–403(b)(3) which provides:

> (3) Pledged goods may be redeemed by the pledgor or seller within the grace period by the payment of any unpaid accrued fees and charges, the repayment of the principal, and the payment of an additional interest charge not to exceed 12.5 percent of the principal. **Pledged goods not redeemed within the grace period shall be automatically forfeited to the pawnbroker by operation of this Code section, and any ownership interest of the pledgor or seller shall automatically be extinguished as regards the pledged item.** [emphasis added]

The Georgia forfeiture statute is similar to the Alabama forfeiture statute in that both provide for the forfeiture of the pledgor's ownership interest to the pawnbroker if the pledged goods are not redeemed within the grace period. Notably, the Georgia Legislature specifically defined pledged goods in Ga.Code Ann. 44–12–130(5) to include motor vehicle certificates of title whereas Ala.Code § 5–19A–2(6) merely defines pledged goods as items of tangible personal property. However, as discussed above the Alabama Supreme Court has recognized that Alabama's definition of pledged goods covers motor vehicle certificates of title.

The Court recognizes that its finding is in conflict with the decision in *Mattheiss v. Title Loan Express (In re Mattheiss)*, 214 B.R. 20 (Bankr.N.D.Ala.1997) wherein the bankruptcy court held that § 5–19A–6 of the Alabama Pawnshop Act does not apply to an automobile that remains in the debtor's possession. The *Mattheiss* court looked to the definition of pledged goods under Ala.Code § 5–19A–2(6) which defines pledge goods as:

> Tangible personal property other than choses in action, securities, or printed evidences of indebtedness, which property is purchased by, deposited with, or otherwise actually delivered into the possession of, a pawnbroker in connection with a pawn transaction.

The court determined that the pawnbroker became the owner of the certificate of title that it had in its possession when the redemption period expired postpetition, but § 5–19A–6 did not operate to transfer legal title in the automobile to the pawnbroker because the debtor never voluntarily delivered possession of the car to the pawnbroker. The court concluded that pawn transactions are secured transactions requiring compliance with the Uniform Commercial Code for both attachment and perfection of the pawnbroker's security interest. It should be noted that in *Mat-*

---

7. *In re Bell,* 279 B.R. at 897.

*theiss,* the thirty day redemption period had not expired when the bankruptcy was filed, and also that the *Mattheiss* opinion predates *Charles R. Hall Motors, Inc. v. Lewis (In re Lewis),* 137 F.3d 1280 (11th Cir.1998) briefly discussed below.

Other Alabama cases suggest that the absolute right and title to a motor vehicle vests under § 5–19A–6 in a pawnbroker after the time to redeem expires. In *State of Alabama v. Thompson,* 791 So.2d 977 (Ala.Civ.App.2001), the Alabama Civil Court of Appeals held that title to the defendant's car would have vested in the pawnbroker pursuant to § 5–19A–6 thirty days after the maturity date of the pawn when the defendant failed to redeem his car had the car not been seized by the Huntsville Police Department for drug trafficking before the redemption period expired. The pawnbroker argued that it was the title owner of the car and that its interest in the car was not subject to forfeiture. The state argued that the pawnbroker was a mere lienholder when the police department seized the car because the pawnbroker's right to title had not ripened under § 5–19A–6 when the police department seized the car eight days before the redemption period expired. The Alabama Court of Civil Appeals noted that § 5–19A–6 provides that "title to pawned property automatically vests in the pawnbroker 30 days after the maturity date of the pawn if the item is not redeemed," but the court agreed with the state that the pawnbrokers right to title had not ripened under § 5–19A–6. The Court held that the pawnbroker was merely a bona fide lienholder before the redemption period expired when the state seized the car.[8] As a bona fide lienholder, the pawnbroker was only entitled to the amount of its interest in the automobile. The case suggests,

however, that title would have automatically vested in the pawnbroker had the car not been seized before the redemption period expired without being paid. In the case before the Court, Mayhall was more than a bona fide lienholder. Mayhall's right to title had fully matured before the debtors filed bankruptcy.

The debtor in *In re Young,* 281 B.R. 74 (Bankr.S.D.Ala.2001) filed bankruptcy after the maturity date but before her right to redeem pawned musical instruments expired. The bankruptcy court stated that to determine whether a debtor can modify a pawn contract under 11 U.S.C. § 1322 of the Bankruptcy Code, the court should first determine whether the redemption period has expired. Where the redemption period has expired prepetition, the court stated that a pawn contract cannot be modified because § 1322 of the Bankruptcy Code only applies to property in which the estate retains an interest. Where the right to redeem has expired prepetition, "neither the debtor nor the estate have a legal or equitable interest in the property as of the petition date because all title and interest in the goods have vested in the pawn broker upon the expiration of the redemption date. Ala. Code (1975) § 5–19A–6." [9]

In *Tucker v. Jim's Pawn & Jewelry (In re Tucker),* 181 B.R. 595 (Bankr.N.D.Ala. 1995), the debtor filed a complaint seeking turnover when the pawnshop repossessed and sold the debtor's vehicle several months after the debtor filed bankruptcy. The debtor's son had pledged the automobile to a pawnbroker and gave the pawnbroker title to the car before the debtor filed bankruptcy. The name on the title did not distinguish between the father and the son, who were named senior and jun-

**8.** *Alabama v. Thompson,* 791 So.2d at 977.

**9.** *In re Young,* 281 B.R. 74 (Bankr.S.D.Ala. 2001).

ior. Although the debtor did not know that his son had pledged the car, the debtor had previously given the son permission to pawn the car. The court found that the debtor's actions demonstrated that he considered his son to be the car's owner. Further, although the debtor retained legal title to the car before the son pledged it to the pawnshop, the debtor gave the car to his son for the son's sole use and gave him permission to pledge the car. The bankruptcy court held that the debtor could not recover the automobile from the pawnshop because the debtor retained no equitable interest in either the car or the car title. "Because the car title was not redeemed within 30 days following the originally fixed maturity date, pursuant to § 5–19A–6, Code of Ala.1975, title to the car passed to the defendant." [10]

After reviewing these cases and the Alabama Pawnshop Act, the Court is satisfied that the debtor in this case transferred his absolute right, title and ownership interest in the 2000 Pontiac Grand Am to Mayhall pursuant to § 5–19A–6 when the pawn ticket matured without being paid before the debtor filed bankruptcy. The vehicle is not property of the estate under § 541(a)(1) of the Bankruptcy Code.

The Court finds further support for its ruling in the Eleventh Circuit case of *Charles R. Hall Motors, Inc. v. Lewis (In re Lewis)*, 137 F.3d 1280 (11th Cir.1998). *Lewis* involved a secured creditor who had repossessed a vehicle two days before the debtors filed for Chapter 13 bankruptcy protection. The debtors filed a complaint for turnover and proposed to pay the secured creditor sixty-two cents on the dollar for the automobile through their Chapter 13 plan. The Eleventh Circuit held that the debtors only had a right of redemption at the commencement of their bankruptcy case. Upon default, the title and right of

possession passed to the creditor under Alabama law. Although the debtors' statutory right of redemption in the repossessed vehicle under Alabama law became property of the estate at the commencement of the case, the debtors' right to redeem was insufficient to render the vehicle subject to turnover. The debtors' proposal to pay sixty-two cents on the dollar through the Chapter 13 plan did not satisfy the debtors' obligation to satisfy the secured obligation in accordance with Alabama law by paying all obligations secured by the collateral in full. In this case, the debtors' right to redeem matured before the debtors filed bankruptcy. Although the debtors remain in physical possession of the car, the debtors' right, title and interest in the car have vested in Mayhall and the debtors no longer have the right to redeem the vehicle like the *Lewis* debtors.

## B. Pawn transactions and the trustee's strong arm powers

By the same logic the trustee cannot use §§ 544 and 547 to avoid the transfer on the ground that Mayhall was not noted on the certificate of title as being a lienholder. Title passed under the Pawnshop Act to Mayhall before the debtors filed bankruptcy. The Court finds this is true because under Alabama law the transaction had fully matured and was no longer a secured transaction and, hence, no need for perfection under Alabama law governing secured transactions on automobiles.

As discussed above, the Alabama Supreme Court has recognized that money lending transactions involving the transfer of motor vehicle certificates of title as security are pawn transactions governed by the provisions of Alabama's Pawnshop Act. After Alabama enacted the Pawnshop Act

---

**10.** *In re Tucker,* 181 B.R. at 596–97.

on May 21, 1992, the supervisor of the Alabama Bureau of Loans notified the pawnbroker in *Floyd v. Title Exchange and Pawn of Anniston, Inc.,* supra, that the pawnbroker's practice of taking motor vehicle certificates of title for pawn and allowing the customer to retain possession of the vehicle violated the Pawnshop Act. The state argued that the pawnbroker's business practice was not a pawn transaction and that the pawnbroker was, therefore, violating the provisions of Alabama's Small Loan Act, Ala.Code §§ 5–18–1 through 24 (1975), by charging excessive rates of interest not permitted under the Small Loan Act.[11] The Alabama Supreme Court held that the transaction was not regulated by the Small Loan Act, but instead regulated by the Pawnshop Act. A few months later in *Blackmon v. Downey,* supra, the Alabama Supreme Court reiterated that title pawn transactions are not small loan transactions. They are pawn transactions governed by the Pawnshop Act. In *Blackmon,* the plaintiffs filed suit alleging that the defendants had wrongfully repossessed and converted the plaintiff's automobile and that the defendants were charging a usurious rate of interest. The trial court entered judgment against the principal shareholder of the pawnbroker. The defendant appealed and argued that the trial court entered judgment against him without supporting evidence and that the trial court improperly applied the law. The Alabama Supreme Court discussed the effect of its decision in *Title Exchange* and stated:

> In *Title Exchange,* we held that an automobile certificate of title is "tangible personal property" within the meaning of the Alabama Pawnshop Act. The effect of that decision was to hold that money-lending transactions involving the transfer of automobile certificates of title for the purpose of giving security **are "pawn" transactions and not "small loan" transactions governed by the provisions of Alabama's Small Loan Act.**[12] [emphasis added]

Clearly, the Alabama Supreme Court recognizes title pawn transactions and has held that same are governed by the Pawnshop Act. Likewise, it can be argued that title pawns of automobiles are not governed by ALA.CODE § 32–8–61 which requires secured parties to be noted on the certificate of title, but even if the Alabama Uniform Certificate of Title Act does apply to pawn transactions, this transaction was fully matured.

The Court recognizes that § 5–19A–20 of the Pawnshop Act provides in part that the Pawnshop Act does not repeal and shall not "be construed to repeal any provision of the Uniform Commercial Code, Sections 7–1–101 et seq." In *Harkness v. EZ Pawn Alabama,* 724 So.2d 32 (Ala.Civ. App.1998), the Alabama Court of Civil Appeals recognized that title pawn transactions are secured transactions under the U.C.C., but the Court found that nothing in the U.C.C. or the Uniform Certificate of Title Act required perfection of the pawnbrokers security interest prior to foreclosure. The plaintiff sued the pawnbroker for conversion after the pawnbroker repossessed the vehicle before perfecting its security interest in the vehicle. The trial court entered summary judgment for the pawnbroker and the court of civil appeals affirmed finding that the pawnbroker was not required to perfect its security interest in the vehicle before taking possession of same under the U.C.C. and the Uniform Certificate of Title Act. The court noted that the Certificate of Title Act provides

---

**11.** Note the Mayhall contract calls for an annual percentage rate of interest of 240%.

**12.** *Blackmon v. Downey,* 624 So.2d 1374, 1376 (Ala.1993).

the exclusive method of perfecting a security interest in a motor vehicle under Ala. Code § 32–8–61, but the act does not require perfection prior to foreclosure. Although the Pawnshop Act by its own terms and as recognized in *Harkness* does not repeal the U.C.C., the issue of perfection under the U.C.C. and the Certificate of Title law is not determinative after a pawn contract fully matures and title has passed under the Pawnshop Act. Based on the *Title Exchange* and *Harkness* cases, the Court has serious doubts that compliance with the Uniform Certificate of Title Act is required at all in pawn transactions.

The Court is aware of the case of *In re Davis*, 269 B.R. 914 (Bankr.M.D.Ala.2001) wherein the bankruptcy court held that a pawnbroker's security interest was not perfected and was subject to avoidance by the Chapter 13 trustee. *Davis* can be distinguished because the pawn contract was still in the redemption period when the debtor filed bankruptcy. The debtor and the pawnbroker both agreed for the pawn transaction to be put in the plan and paid over time, but the trustee objected. The pawnbroker was not represented by counsel.

## II Fraudulent Transfer—11 U.S.C. § 548(a)(1)

The transfer of the debtor's complete ownership interest in the vehicle under the fully matured title pawn contract is subject to avoidance under § 548(a) of the Bankruptcy Code. The trustee seeks to set aside the transfer on the ground that the forfeiture constituted a fraudulent transfer under § 548(a)(1) of the Code. Section 548 of the Bankruptcy Code applies to any "transfer" defined under § 101(54) of the Code to mean "every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with property or with an interest in property, including retention of title as a security interest and foreclosure of the debtor's equity of redemption."

■ Section 548(a)(1) has two types of fraudulent conveyances that a trustee may set aside. Subsection (A) covers transfers made with actual intent to hinder, delay or defraud and subsection (B) covers transfers made for less than a reasonable equivalent value while the debtor was insolvent or became insolvent because of the transfer. The Court finds that subsection (A) is clearly inapplicable and proceeds to examine subsection (B).

## III Constructive Fraud—11 U.S.C. § 548(a)(1)(B).

■ When a trustee seeks to avoid a transfer under § 548(a)(1)(B), the trustee bears the burden to prove each element of a constructive fraud by a preponderance of the evidence.[13] To prevail the trustee must establish that:

(1) the debtor had an interest in property;

(2) the transfer of that interest occurred within one year of the bankruptcy petition;

(3) the debtor was insolvent at the time of the transfer or became insolvent as a result thereof; and

(4) the debtor received less than reasonably equivalent value in exchange for such transfer.[14]

---

**13.** *Helms v. Roti (In re Roti)*, 271 B.R. 281, 295 (Bankr.N.D.Ill.2002); *Tomsic v. Pitocchelli (In re Tri–Star Tech. Co., Inc.)*, 260 B.R. 319, 323 (Bankr.D.Mass.2001); *Burdick v. Lee*, 256 B.R. 837, 839–40 (D.Ma.2001); *Baumgart v. Bedlyn, Inc. (In re Empire Interi-* *ors)*, 248 B.R. 305, 307 (Bankr.N.D.Ohio 2000).

**14.** *BFP v. Resolution Trust Corp.*, 511 U.S. 531, 535, 114 S.Ct. 1757, 128 L.Ed.2d 556

Simply put, the transfer must be for less than fair consideration and must have been made while the debtor was insolvent or must have rendered the debtor insolvent.

The trustee has established the first three elements under § 548(a)(1)(B). There is no dispute that the debtor had an unencumbered ownership interest in the vehicle before he pawned same. Mayhall concedes in its response to plaintiff's motion for summary judgment that the transfer under the pawn contract occurred within one year of the petition filing date. There is likewise no dispute that the debtor was insolvent when he entered into the pawn contract. The debtor states in his affidavit that at the time of the pawn his financial condition was substantially the same as it was upon the filing of his bankruptcy petition and the debtors' bankruptcy schedules reflect the debtors' insolvency.

The only remaining issue under § 548(a)(1)(B) is whether the debtor received less than a reasonably equivalent value in exchange for the transfer. The debtor received $1,500.00 for the transfer of his ownership interest in the vehicle. The trustee alleges that the replacement value of the vehicle at the time of the pawn contract was $7,350.00 based on the affidavit of Bennie Pointer, an experienced car appraiser and the Executive Vice President of First State Loans, a business that finances automobile loans. Mayhall has not disputed this value, thus, the Court must determine whether the transfer of the debtor's ownership interest in a vehicle valued at $7,350.00 in exchange for $1,500.00 was a reasonably equivalent value in exchange for such transfer.

The Supreme Court in *BFP v. Resolution Trust Corp.*, 511 U.S. 531, 114 S.Ct. 1757, 128 L.Ed.2d 556 (1994) addressed the term "reasonably equivalent value" under § 548(a)(1)(B) in the mortgage foreclosure context and held that the price received at a mortgage foreclosure sale conclusively established the reasonably equivalent value of the property as long as the foreclosure sale was conducted according to state law requirements. The Supreme Court refused to equate "reasonably equivalent value" with "fair market value." Instead, the Court stated that the constructive fraud element under § 548(a) requires a "judicial inquiry into whether the foreclosed property was sold for a price that approximated its worth at the time of sale." [15] Although the Court emphasized that its holding only covered mortgage foreclosures and not other types of forced sales, the Supreme Court's finding that § 548(a) requires a court to determine whether the "property was sold for a price that approximated its worth at the time of sale," [16] is nevertheless instructive.

It will not suffice to simply argue that an amount received that is less than the replacement value of a pawned automobile supports a finding that the debtor received less than reasonably equivalent value in exchange for such transfer. Mayhall argues that title pawn transfers will almost always be for less than the full value of the vehicle due to the nature of the transaction. A pawnbroker cannot avoid the application of § 548(a)(1)(B) simply because most pawn transactions are made for less than the full

(1994); *Dionne v. Keating (In re XYZ Options, Inc.)*, 154 F.3d 1262, 1275 (11th Cir.1998).

**15.** *BFP v. Resolution Trust Corp.*, 511 U.S. 531, 537, 114 S.Ct. 1757, 128 L.Ed.2d 556 (1994).

**16.** *Id.*

value of the vehicle. The court must still inquire whether the transfer was made for less than the reasonably equivalent value in exchange. In *Carter v. H & B Jewelry & Loan Co. (In re Carter)*, 212 B.R. 972 (Bankr.D.Or.1997), the bankruptcy court cited the Supreme Court *BFP* decision and found that the debtor received the reasonably equivalent value in a pawn transaction when she forfeited jewelry valued at $750.00 when the debtor would have had to pay to redeem the pawned items. The court concluded that the debtor received reasonably equivalent value when she forfeited her interest in the rings in return for releasing her from her obligation to repay the loan. In *Bell v. Instant Car Title Loans (In re Bell)*, 279 B.R. 890 (Bankr.N.D.Ga.2002), although the issue was not yet ripe for determination, the bankruptcy court noted that a vehicle worth $10,000.00 was not reasonably equivalent in value to an obligation of $5,300.00, the amount required to redeem the debtor's pawned vehicle. Similarly, the Court finds in this case that a vehicle worth $7,350.00 was not reasonably equivalent in value to the debtor's obligation to pay $1,800.00 to redeem the vehicle. The Court finds that the trustee has established the last element under § 548(a)(1)(B). The debtor received less than reasonably equivalent value in exchange for the transfer.

## IV Recovery

 Under § 550 of the Bankruptcy Code, a trustee may recover the property transferred or the value of the property transferred from the transferee. The relevant portion of § 550 provides:

(a) Except as otherwise provided in this section, to the extent that a transfer is avoided under section 544, 545, 547, 548, 549, 553(b) or 724(a) of this title, the trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property, from—

(1) the initial transferee of such transfer or the entity for whose benefit such transfer was made[.]

Section § 548(c) of the Bankruptcy Code provides:

(c) Except to the extent that a transfer or obligation voidable under this section is voidable under section 544, 545, or 547 of this title, a transferee or obligee of such a transfer or obligation that takes for value and in good faith has a lien on or may retain any interest transferred **or** may enforce any obligation incurred, as the case may be, to the extent that such transferee **or** obligee gave value to the debtor in exchange for such transfer or obligation. [emphasis added] [17]

Thus, if the transferee obtained the transferred property for value and in good faith and if the transfer is not avoidable by any other avoiding power, then the transferee is granted a lien or may enforce the obligation on the transfer to the extent of any value given by the transferee. As discussed above, the Court here finds that the transaction is not otherwise avoidable under sections 544, 547 or 548. In this case, the obligation was fully matured at the time of the filing of the bankruptcy petition and the debtor is not entitled under § 1322(b)(2) to modify the pawnbroker's rights by paying this obligation through the debtor's Chapter 13 plan; therefore, giving Mayhall a lien on the vehicle would not have any effect. The Court finds that Mayhall is entitled to enforce the obligation incurred to the extent the pawnbroker gave value.

The trustee argues that Mayhall is not entitled a return of the value because it did

---

**17.** The rules of construction under 11 U.S.C. § 102(5) provide that "or" is not exclusive.

not receive the transfer in good faith. Although the Court finds that the debtor received less than "reasonably equivalent value" in exchange for the transfer, that fact standing alone does not show lack of good faith on the part of the transferee. The sum of $1,500.00 advanced against the value of $7,350.00 does not in and of itself establish bad faith. The debtor and Mayhall entered into an arm's length transaction in the ordinary course of the pawnbroker's business. Although the debtor was insolvent or was made insolvent as a result of the transaction, pawn customers typically have financial problems otherwise they would not be pledging their personal property for short term loans at exorbitant rates of interest. This is merely the nature of the pawnbroker's business. The Court finds that this title pawn transaction was entered into in good faith. The Alabama Legislature passed the Alabama Pawnshop Act effective May 21, 1992 and the Alabama Supreme Court has upheld the application of the Pawnshop Act to title pawn transactions despite what some may consider unfair business practices.[18] In the eyes of the law, the parties entered into a legal business arrangement. Thus, the Court finds that Mayhall is entitled to the protection afforded good faith transferees under § 548(c).

■ Under § 1303 of the Bankruptcy Code the debtor has "exclusive of the trustee, the rights and powers of a trustee under sections 363(b), 363(d), 363(e), 363(f), and 363(*l*)" to use sell or lease recovered property. Section 522(g) of the Bankruptcy Code allows a debtor to exempt property that the trustee recovers under one of the trustee's avoiding powers, but only if the property was involuntarily transferred and if the debtor did not conceal the property.[19] In this case, the debtor clearly voluntarily transferred his ownership interest in the vehicle when he entered into the pawn transaction.[20] Thus, the debtor cannot claim an exemption under 11 U.S.C. § 522(g) in the funds recovered by the trustee. Since the trustee is not empowered to sell property under Chapter 13 and the debtors have no right to exempt this property, the Court is going to allow Mayhall to sell the property in a commercially reasonable manner and remit to the trustee the balance it recovers from the sale minus the amount of the obligation due on January 22, 2003 with interest at the contract rate on the amount until paid and its reasonable costs of sale.

The debtor is to immediately surrender possession of the vehicle to Mayhall and Mayhall is given 45 days to sell the vehicle. Mayhall shall immediately pay any remaining balance as set out above to the Chapter 13 trustee for the benefit of the debtors' unsecured creditors.

---

**18.** *Floyd v. Title Exchange and Pawn,* 620 So.2d 576 (Ala.1993); *Blackmon v. Downey,* 624 So.2d 1374 (Ala.1993).

**19.** *Trujillo v. Grimmett (In re Trujillo),* 166 F.3d 1218 (9th Cir.1998)(finding § 522(g) prevented debtors from recapturing their homestead exemption after trustee succeeded in having transfer set aside as fraudulent conveyance and recovered under § 550); *Schief-*

*fler v. Beshears (In re Beshears),* 182 B.R. 235 (Bankr.E.D.Ark.1995)(finding debtors were not entitled to exempt property recovered by trustee under § 550 because transfer was voluntary).

**20.** *In re Mattheiss,* 214 B.R. 20, 22 (Bankr. N.D.Ala.1997).